ROLAND L. BELSOME, Judge.
 

 1 [Plaintiff-Appellant, Karen Kuebel, appeals the trial court’s judgment sustaining Defendant-Appellee’s exceptions of no cause of action and lack of subject matter jurisdiction. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 At the time of her injury, Appellant Karen Kuebel was a Biologist II for Appel-lee, the Louisiana Department of Wildlife and Fisheries (“DWF”). As a Biologist II, Appellant traveled on vessels to various
 
 *22
 
 test sites. On August 24, 2000, Appellant injured her neck and back while gathering samples in a seine net. The trial court found that Appellant’s injuries were caused by DWF’s negligence in failing to follow proper guidelines and failing to provide Appellant with a safe work environment. The court also found that the vessel on which Appellant traveled was unsea-worthy due to its lack of equipment to assist Appellant in the pulling of the seine nets.
 

 |2Appellant filed suit on August 21, 2001, seeking damages under the Jones Act, 46 U.S.C. § 30104
 
 [1]
 
 (“Jones Act”) and general maritime law for her injuries. On November 12, 2007, Appellee filed exceptions of no cause of action and lack of subject matter jurisdiction, asserting that because Appellant was a State employee, she was precluded from relief pursuant to the state’s sovereign immunity; thus, Appellee argued that Appellant’s sole remedy was the Louisiana Workers’ Compensation Act (“WCA”).
 

 Appellant argued in her opposition to the exceptions that issues of material fact existed regarding her seamen status, as evidenced by the affidavit and deposition of Appellant’s coworker, Jack Cahill, who testified as to the amount of time that Appellant spent on vessels as a Biologist II for the DWF. Appellant further argued that because of the amount of time she worked on vessels, genuine issues of fact existed regarding the applicability of the Jones Act and general maritime law, and whether the “seamen’s exception” within the WCA applied.
 

 A hearing on the exceptions was conducted on May 12, 2008, at which time Appellant argued that the State waived its right to the exceptions because it had made maintenance and cure payments for the past several years. The trial court requested briefs regarding the specific issue of waiver. Appellee filed a supplemental brief to the trial court, arguing that the State did not waive its |,^immunity as a sovereign entity in making payments to Appellant and could therefore not be subject to suit under the Jones Act or general maritime law.
 
 [2]
 
 The trial court signed a judgment granting Appellee’s exceptions on May 22, 2008. This appeal followed.
 

 STANDARD OF REVIEW
 

 This Court articulated the
 
 de novo
 
 standard of review for exceptions of
 
 *23
 
 no cause of action in
 
 Southern Tool & Supply, Inc. v. Beerman Precision, Inc.,
 
 03-0960 (La.App. 4 Cir. 11/26/03), 862 So.2d 271:
 

 We review a trial court’s decision on an exception of no cause of action
 
 de novo
 
 “because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition.”
 
 City of New Orleans v. Board of Comm’rs of Orleans Levee Dist.,
 
 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In doing so, we are confined to the allegations of the petition. No evidence can be introduced to support or to controvert an exception of no cause of action. La. C.C.P. art. 931. Rather, we must accept as true the well pleaded factual allegations set forth in the petition. Based thereon, our job is to determine “whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.”
 
 Everything on Wheels Subaru v. Subaru South, Inc.,
 
 616 So.2d 1234, 1235 (La.1993).
 

 A defendant’s peremptory exception of no cause of action is designed to test the legal sufficiency of the plaintiffs petition. It poses the question “whether the law affords a remedy on the facts alleged in the pleading.”
 
 Id.
 
 Louisiana has a system of fact pleading, and “[t]he mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action.”
 
 Montalvo v. Sondes,
 
 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. As we recently noted, “[i]t is | insufficient to state a cause of action where the petition simply states legal or factual conclusions without setting forth facts that support the conclusions.”
 
 Bibbins v. City of New Orleans,
 
 02-1510, p. 5 (La.App. 4 Cir. 5/21/03), 848 So.2d 686, 691,
 
 writ denied,
 
 03-1802 (La.10/10/03), 855 So.2d 357.
 

 The exceptor has the burden of proving that the petition fails to state a cause of action. This burden serves the public policy of affording the plaintiff his day in court to present his case. “When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence.”
 
 Kuebler v. Martin,
 
 578 So.2d 113, 114 (La.1991). “An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief.”
 
 City of New Orleans v. Board of Directors of Louisiana State Museum,
 
 98-1170, p. 10 (La.3/2/99), 739 So.2d 748, 749.
 

 Id.
 
 at pp. 6-7, 862 So.2d at 278.
 
 [3]
 

 DISCUSSION
 

 Appellant asserts three assignments of error: 1) that the trial court erred in finding no cause of action against the State arising out of Appellant’s admiralty claims and disregarding this Court’s opinion in
 
 Higgins v. State of Louisiana,
 
 627 So.2d 217 (La.App. 4 Cir.1993) and the U.S. Supreme Court’s opinion in
 
 Chandris, Inc. v. Latsis,
 
 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); 2) the trial court erred in not finding that the “seamen’s exception” to the WCA applied to Appellant; and 3) that the trial court erred in allowing the issue of Appellee’s compensation to Appellant to factor into the court’s determination that Appellant did not have a cause of action for Jones Act or general maritime law claims.
 

 
 *24
 
 ASSIGNMENT OF ERROR # 1
 

 In Appellant’s first assignment of error, she asserts that the trial court erred in finding no cause of action against the State pursuant to the Jones Act
 
 [4]
 
 or general | amaritime law. To determine whether Appellant may bring a Jones Act or gener-' al maritime , claim against the DWF, an arm of the State of Louisiana, we must first examine Louisiana and U.S. Supreme Court jurisprudence.
 

 The leading case in this Circuit is
 
 Higgins v. State of Louisiana,
 
 627 So.2d 217 (La.App. 4 Cir.1993).
 
 Higgins
 
 addressed this precise issue and held that an injured state employee could bring suit against the State of Louisiana under the Jones Act and general maritime law. In making this determination, this Court relied, in part, on
 
 Hilton v. South Carolina Public Railways Commission,
 
 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991), which held that an employee of a state-owned railroad could bring suit against its employer under the Federal Employers’ Liability Act (“FELA”) in state court. The Jones Act and FELA have historically received similar treatment by the courts. See
 
 Welch v. Texas Department. of Highways and Public Transportation,
 
 483 U.S. 468, 476-77, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); James E. Pfander,
 
 Jones Act Claims Against the States After Alden v. Maine:
 
 The Surprisingly Strong Case for a Compulsory State Court Forum, 36 J. Mar. L. & Com. 1 at n. 6 (2005). Unlike the case
 
 sub judice,
 
 however, the injured State employee in
 
 Higgins
 
 did not have a remedy under the WCA at that time because of his seaman status.
 
 Higgins,
 
 627 So.2d at 221. Moreover, since
 
 Higgins,
 
 fundamental changes in the law have occurred.
 

 Appellee argues, and the trial court found, that the U.S. Supreme Court case of
 
 Alden v. Maine
 
 is contrary to the assertion that state employees may sue the state as their employer for claims under the Jones Act and general maritime law in state court. In
 
 Alden,
 
 a group of probation officers sued the State of Maine, their |fiemployer, for alleged violations of overtime provisions' of the Fair Labor Standards Act (“FLSA”), seeking compensation and damages.
 
 Alden v. Maine,
 
 527 U.S. 706, 711, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999). The Court held that “the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject non-consenting States to private suits for damages in state courts.”
 
 Alden, supra,
 
 at 712, 119 S.Ct. 2240 (emphasis added). The Court further held that Maine did not consent to suits for overtime pay and damages under the FLSA.
 
 Id.
 
 Accordingly, the state’s sovereign immunity operated to prevent individuals from litigating to enforce federal statutory rights against the states.
 
 [5]
 
 Thus, “[Mainej’s refusal to consent did not improperly discriminate against a federal cause of action but per
 
 *25
 
 missibly invoked the state’s own constitutional right to freedom from litigation that the Court viewed as an affront to the state’s sovereign and dignitary interest.” Pfander, 36 J. Mar. L. & Com. 1, 2. The Court further found that “[a] broad immunity was necessary ... to prevent the “ ‘indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties ...’” because to hold otherwise, “the Court reasoned, states would “face the prospect of being thrust, by federal fiat and against [their] will, into the disfavored status of a debt- or.... ” Sean M. Monohan,
 
 A Tempest in the Teapot: State Sovereign Immunity and Federal Administrative Adjudications in Federal Maritime Commission v. South Carolina State Ports Authority,
 
 88 Cornell L.Rev. 1794, 1801-1805 (2003)(quoting
 
 Alden,
 
 supra). “The Court based its decision on 17structural principles and state dignity, as well as on a perceived need to protect its
 
 Seminole Tribe
 
 decision from erosion through efforts to shift the assertion of federal law claims into state courts.” Pfander, 36 Mar. L. & Com. at 7.
 

 Alden
 
 and its progeny indisputably represent significant changes in U.S. Supreme Court and federal law.
 
 Alden
 
 has generated much debate and has been considered by many to be a departure from the U.S. Supreme Court’s previous jurisprudence.
 
 [6]
 
 One author has described the
 
 Alden, Seminole Tribe,
 
 and
 
 College Savings Bank
 
 decisions (the
 
 “Alden
 
 trilogy”) as “represent[ing] a highly activist rejection of more than twenty years worth of constitutional decisions that had established Congress’ powers to subject states to suit under federal laws.”
 
 [7]
 
 Vicki C. Jackson,
 
 Seductions of Coherence, State Sovereign Immunity, and the Denationalization of Federal Law,
 
 31 Rutgers L.J. 691, 696 (2000). Since 1996, the Supreme Court has arguably “reversed course .... overruling] two of its own earlier decisions
 
 (Union Gas
 
 and Parden),”
 
 [8]
 
 and “discounting] assumptions about sovereign immunity in state courts made in at least six other decisions ...”
 
 [9]
 
 |RJackson,
 
 supra,
 
 31 Rut
 
 *26
 
 gers L.J. at 696-97. Another author determined that “the most valid understanding of the interpretive process deployed in
 
 Alden
 
 is that a majority of the Court preferred state autonomy, fiscal predictability, and political accountability, and disapproved of individuals’ ability to influence the course of government through litigation.” Roger C. Hartley,
 
 Alden Trilogy: Praise and Protest,
 
 23 Harv. J.L. & Pub. Pol’y 323, 350 (2000).
 

 As Louisiana has not addressed this precise issue in the wake of the
 
 Alden
 
 trilogy, an examination of other jurisdictions’ opinions applying
 
 Alden v. Maine
 
 to facts which mirror the instant case is also warranted. Predictably, courts have generally interpreted
 
 Alden
 
 as disallowing suits against the state
 
 [10]
 
 for maritime and railroad personal injuries.
 
 [11]
 
 See Pfander,
 
 supra,
 
 at 7. For example, an employee of the Port of Portland who sustained injuries on a vessel and received state workers’ compensation benefits subsequently sought to recover damages under general maritime law and the Jones Act, alleging the Port’s negligence in causing his injuries.
 
 Nor-gaard v. Port of Portland,
 
 223 Or.App. 543, 546, 196 P.3d 67, 69 (2008). After extensively quoting
 
 Alden,
 
 the Oregon appeals court found that because the Port of Portland was not an arm of the state, it was not entitled to sovereign immunity from suit in state court.
 
 Norgaard,
 
 223 Or.App. at 545-46, ln196 p.3d at 69. The court noted, however, that “there is no question that the states enjoyed immunity from private actions before the ratification of the federal constitution and that they continue to enjoy such immunity.”
 
 Id.
 

 Similarly, in
 
 Midgett v. North Carolina Dep’t of Transp.,
 
 152 N.C.App. 666, 568 S.E.2d 643 (2002), a seaman and an employee of the state’s Department of Transportation (“DOT”) appealed the Industrial Commission’s dismissal of his Jones Act claims against the DOT for lack of jurisdiction. As in
 
 Norgaard, supra,
 
 the plaintiff in
 
 Midgett
 
 had previously received a workers’ compensation settlement.
 
 Midgett,
 
 568 S.E.2d at 644. The court examined the language of the state’s Tort Claims Act, finding that the Act constituted a specific statutory waiver of immunity under certain circumstances.
 
 Id.
 
 at 645.
 
 *27
 
 Relying upon
 
 Alden,
 

 [12]
 

 the court held that although the state’s Tort Claims Act expressed the statutory waiver of immunity to some claims, the state did not consent to be sued under the Jones Act.
 
 Id.
 
 at 647. The court further held that the legislature “did not by ‘plain, unmistakable mandate’ waive the State’s immunity to suit under the Jones Act in a tort claim.”
 
 Id.
 
 at 648.
 

 The court also dismissed the plaintiffs assertion that by not specifically addressing the Jones Act, the U.S. Supreme Court left open the possibility that states were subject to litigation in state court by private parties for Jones Act claims.
 
 Id.
 
 at 647. The court cited
 
 Federal Maritime Com. v. SCSPA,
 
 585 U.S. 743, 767, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002),
 
 [13]
 
 where the Court found that
 
 Seminole Tribe
 
 precluded a ‘maritime commerce’ exception to state sovereign | inimmunity, stating that “[e]ven when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States.”
 
 Midgett, supra
 
 (quoting
 
 Federal Maritime Com.,
 
 535 U.S. at 767, 122 S.Ct. 1864)(citing
 
 Seminole Tribe of Florida v. Florida,
 
 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252, 277 (1996)).
 

 Perhaps most significantly,
 
 [14]
 
 the Supreme Court of Alaska recently found that
 
 *28
 
 the Jones Act did not provide a state employee who was also a seaman the right to bring suit against the state (in state court) without the state’s consent in
 
 Glover v. State, Dep't. of Transp., Alaska Marine Highway Sys.,
 
 175
 
 P.3d
 
 1240 (Alaska 2008). In 2003, Alaska’s legislature added a provision to a statute regarding waiver of immunity from suit in state court, effectively barring suit in state court if the claim,
 
 inter alia,
 
 results from an injury, death, or illness from a [ n seaman during the course of or arising out of employment with the state. Pfander,
 
 supra,
 
 at 8-9 (citing Alaska Stat. § 09.50.250(5), 2003 Alaska Sess. Laws ch. 30 (July 1, 2003)). Alaska’s Supreme Court upheld the statute, finding that it did not violate due process or equal protection rights; that the Jones Act did not supercede the statute; that the statute did not violate the provision of Alaska’s constitution for providing for suits against the state; and that the statute was not prohibited by either the Supremacy Clause or the Admiralty and Maritime Jurisdiction Clause.
 
 See generally, Glover, supra,
 
 175 P.3d 1240. The
 
 Glover
 
 court examined U.S. Supreme Court jurisprudence in light of
 
 Alden v. Maine
 
 and concluded that because Alaska did not consent to suit in state court under the Jones Act or general maritime law, the state employee’s exclusive remedy was workers’ compensation.
 
 Glover,
 
 175 P.3d at 1255, 1260-63.
 

 The Louisiana Workers’ Compensation Act provides, in pertinent part:
 

 A. The provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or a political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; provided that one employed by a contractor who has contracted with the state or other political subdivision, or incorporated public board or commission through its proper representative, shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission; further, provided that members of the police department, or municipal employees performing police services for any municipality who are not elected officials shall be covered by this Chapter and shall be eligible for compensation; and provided further that criminal deputy sheriffs for the parish of Orleans shall be covered by this Chapter and shall be eligible for compensation as provided herein.
 

 [[Image here]]
 

 D. Employees of the state, but not those of political subdivisions, shall be provided compensation under this Section by the office of risk management of the Division of Administration in accordance with R.S. 39:1527, et seq. For purposes of this Section, “employees of the state” means the employees of “state agencies” as defined by R.S. 39:1527(1). Employees of political subdivisions shall be provided compensation
 
 *29
 
 under this Section by the governing authorities of their respective political subdivisions. The fact that the state may grant to an employee of a political subdivision any additional or supplemental pay or otherwise provide funds for the payment of such employee’s salary shall not make such employee, in whole or in part or in any way, an employee of the state.
 

 La. R.S. 23:1034(A) and (D) (emphasis added). There are two provisions in the WCA that address seamen. The first provides, in pertinent part:
 

 [N]othing in this Chapter shall be construed to apply to any work done on, nor shall any compensation be payable to the master, officers or members of the crew of, any vessel used in interstate or foreign commerce not registered or enrolled in the State of Louisiana.
 

 La. R.S. 23:1037. The second provision states, in pertinent part:
 

 No compensation shall be payable in respect to the disability or death of any employee covered by the Federal Employer’s Liability Act [FELA], the Longshoreman’s and Harbor Worker’s Act, or any of its extensions, or the Jones Act.
 

 La. R.S. 23:1035.2.
 

 Louisiana does not have a torts claims act.
 
 See Monteville v. Terrebonne Parish Consol. Government,
 
 567 So.2d 1097, 1104 (La.1990). Although the Louisiana Constitution mandates that the State is not immune in tort or contract, Article 12, Section 10 of the Louisiana Constitution, entitled “Suits against the State”, also provides that the legislature may waive or limit the State’s liability:
 

 (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
 

 (B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political | ^subdivision. A measure authorizing suit shall waive immunity from suit and liability.
 

 (C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
 

 La. Constitution Art. XII § 10.
 
 [15]
 
 Read in conjunction with the WCA, Louisiana has established a procedure for suits against
 
 *30
 
 the State by providing that injured State employees may bring claims under the WCA. Accordingly, we find that article 12, section 10 of the Louisiana Constitution does not evidence the state’s consent to be sued and cannot operate as an absolute waiver of sovereign immunity such that the legislature has no authority to assert immunity for specific types of claims.
 
 [16]
 
 Accordingly, we find that the State of Louisiana has not consented to be sued in its own courts by individuals seeking recovery under the Jones Act.
 
 [17]
 

 In
 
 Oshinski v. Northern Indiana Commuter Transp. Dist.,
 
 843 N.E.2d 536 (Ind. Ct.App.2006), the court considered a similar issue. In
 
 Oshinski,
 
 an employee of the Northern Indiana Commuter Transportation District (“NICTD”) filed suit 114under FELA against NICTD, alleging negligence by failing to provide proper safety equipment.
 
 Oshinski,
 
 843 N.E.2d at 538. NICTD’s affirmative defenses included the assertion of sovereign immunity and noncompliance with the Indiana Torts Claims Act (“ITCA”), upon which the trial court ultimately granted summary judgment in NICTD’s favor.
 
 Id.
 

 With regard to sovereign immunity, the plaintiff argued that Indiana had provided blanket consent to be sued for FELA actions in state court, without regard for the ITCA.
 
 Id.
 
 at 539. NICTD conceded that the ITCA provided qualified consent for suits against the state.
 
 Id.
 
 at 540. The
 
 Oshinski
 
 court first cited
 
 College Savings Bank
 
 for the principle that “[a] state may not be sued in its own courts unless it has waived sovereign immunity by expressly consenting to such suit through a ‘clear declaration’ of that consent.”
 
 Id.
 
 at 539 (quoting
 
 Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
 
 527 U.S. 666, 680, 119 S.Ct. 2219, 2228, 144 L.Ed.2d 605 (1999). The court then recognized the “significant evolution” of the U.S. Supreme Court’s jurisprudence during the last few decades, particularly the Court’s overruling of
 
 Parden v. Terminal Railway of Alabama State Docks Department,
 
 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) in
 
 College Savings Bank.
 

 [18]
 

 Oshinski,
 
 843 N.E.2d at 540.
 

 Plaintiff Oshinski argued that certain language in
 
 Alden
 

 [19]
 

 evidenced that Indiana consented to FELA suits in state court by composing its workers’
 
 *31
 
 | ^compensation statutes to exclude railroad workers.
 
 Oshinski,
 
 843 N.E.2d at 543. The court of appeals disagreed:
 

 We can not conceive of any way in which the worker’s compensation statutes could be read as an unambiguous statement of Indiana’s blanket consent to FELA suits against the State in Indiana state courts. Indiana Code Section 22-3-2-2(b) simply provides that Indiana’s worker’s compensation statutes do not apply to railroad workers. The legislature makes no mention of FELA in that statute, and we are aware of no Indiana case in which our judiciary has made a statement regarding the State’s blanket consent in FELA cases. We have already identified
 
 Campbell
 
 [v.
 
 State,
 
 284 N.E.2d 733, 737, 259 Ind. 55, 63 (Ind.1972) ] and ITCA as unequivocal statements by the judiciary and legislature declaring Indiana’s qualified consent in tort claims. Those statements are un-falteringly clear in their purpose, and there is no similarity between the level of clarity in those statements and in that which Oshinski contends is present in the worker’s compensation statutes.
 

 Even if we were persuaded there is merit in the premise Oshinski sets forth, his argument remains unconvincing. At the very most, Indiana’s worker’s compensation statutes could be read as some sort of implied waiver of Indiana’s sovereign immunity. A waiver by implication simply is not good enough. As in the context of federal sovereign immunity, a state’s waiver of its sovereign immunity may not be implied. See
 
 Coll. Sav. Bank,
 
 527 U.S. at 682, 119 S.Ct. at 2229.
 

 Finally, Oshinski posits that the Supreme Court held in
 
 Hilton
 
 and
 
 Alden
 
 that Indiana has given blanket consent to FELA suits against the State in Indiana state courts. As we commented during oral argument, Oshinski seems to be asking us to read the Supreme Court’s tea leaves. We are not persuaded that the Court’s statements in
 
 Hilton
 
 and
 
 Alden
 
 should be assigned as much significance as Oshinski urges. Instead, we read them to be mere obiter dicta, meaning they were unnecessary to the opinions and lack precedential effect. See Black’s Law Dictionary 1100 (7th ed.1999).
 

 Id.
 
 at 544-45 (footnotes omitted).
 
 [20]
 
 Similarly, we do not find that the Louisiana WCA’s “seaman’s exception” operates as consent or waiver for private litigants to | ifibring suit against Louisiana under the Jones Act or general maritime claims in state court.
 

 
 *32
 
 Likewise, an Alabama court considered a similar issue regarding a FELA claim and concluded that Alabama’s constitution did not demonstrate any waiver of state sovereign immunity.
 
 Alabama State Docks Terminal Ry. v. Lyles,
 
 797 So.2d 432, 438 (Ala.2001). The state’s constitution provided “that ‘the State of Alabama shall never be made a defendant in any court of law or equity.’ ”
 
 Lyles, supra;
 
 Article I § 14, Alabama Constitution of 1901. The
 
 Lyles
 
 court acknowledged that “[w]hile the Eleventh Amendment governs the jurisdiction of federal courts over the states and immunizes the states from certain actions in the federal courts, the Eleventh Amendment is not the source of a state’s immunity from actions in its own courts.”
 
 Lyles,
 
 797 So.2d at 436 (citing
 
 Alden v. Maine,
 
 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). Rather, “[a] state’s immunity from actions in its own courts derives from other bases, including common-law sovereign immunity and state constitutional sovereign immunity, such as the immunity guaranteed the State of Alabama by Art. I, § 14, Alabama Constitution of 1901.
 
 Id.
 
 Therefore, the court concluded, “the State [of Alabama] |17and its agencies have absolute immunity from suit in any court.”
 
 Lyles,
 
 797 So.2d at 435.
 

 Accordingly, because we find that Louisiana has not consented to be sued under the Jones Act in this case, we now turn to the issue of whether Congress, pursuant to the Jones Act, has validly abrogated the requirement that a state must consent to suit.
 
 [21]
 

 In considering this precise issue, the
 
 Glover
 
 court noted that “[t]he [U.S.] Supreme Court has issued two conflicting rulings on the applicability of the Jones Act to non-consenting states”:
 
 Welch v. Texas Department of Highways and Public Transportation,
 
 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) and
 
 Hilton v. South Carolina Public Railways Commission,
 
 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991).
 
 Glover,
 
 175 P.3d at 1255. The
 
 Glover
 
 court adopted the appellate court’s reasoning
 
 [22]
 
 that
 
 Hilton
 
 has been so significantly narrowed by its subsequent decisions in
 
 Alden v. Maine, supra, Seminole Tribe of Florida v. Florida, supra,
 
 and
 
 College Savings Bank v. Florida Prepaid Postsecondary Edtication Expense Board,
 
 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) that its findings are inapplicable to state employees seeking to bring suit against a state under the Jones Act in state court.
 

 First, the court discussed
 
 Hilton
 
 with regard to Glover’s argument that because the State of Alaska chose to enter the field of maritime commerce, it constructively consented to Jones Act and maritime litigation in its state courts:
 

 11^Hilton
 
 concerned an injured employee of a state-owned railroad that sued his state employer under the Federal Employers’ Liability Act (FELA). The Court held that South Carolina was subject to suit by an injured state employee suing under FELA (and, by implication, the Jones Act) and that the Eleventh Amendment immunity of the state did not bar the suit. The
 
 Hilton
 
 decision relied on the court’s 1964 inter
 
 *33
 
 pretation of FELA language in
 
 Parden v. Terminal Railway of Alabama Docks Department
 
 and general principles of
 
 stare decisis
 
 that courts should generally stand by settled principles of law. In the 1964 decision in
 
 Parden
 
 the Court held that “when Congress enacted FELA and used the phrase ‘[e]very common carrier by railroad,’ 45 U.S.C. § 51, to describe the class of employers subject to its terms, it intended to include state-owned railroads.” The Par-den Court further held that states that engaged in interstate commerce by operating railroads constructively consented to suits under FELA. The Parden Court also held that FELA was enacted in the exercise of Congress’ “constitutional power to regulate interstate commerce.”
 

 In 1987, the U.S. Supreme Court overruled that portion of
 
 Parden
 
 that stood for the proposition that FELA constituted a waiver of the Eleventh Amendment in
 
 Welch v. Texas Department of Highways & Public Transportation.
 
 In
 
 Welch,
 
 a Jones Act suit against the State of Texas was brought in federal court. The Court held that the Jones Act, which applies the FELA’s remedial provisions to seamen, does not amount to a clear statement of Congressional intent to abrogate the states’ Eleventh Amendment sovereign immunity. The Court held that employee Welch could not bring her Jones Act claim against the state in federal court in the absence of a clear statement in the legislation to abrogate state sovereign immunity.
 
 [23]
 

 Hilton
 
 was decided in 1991. The
 
 Hilton
 
 majority concluded that upsetting the long-standing FELA liability rule set forth in
 
 Parden
 
 in state court actions would be unfair, particularly since
 
 Hilton
 
 would be left with no remedy for his injuries unless his FELA claim was recognized and since many states’ workers’ | ^compensation laws specifically exclude railroad workers from coverage because of the assumption that FELA provides adequate protection for those workers. The
 
 Hilton
 
 court recognized that its decision represented an exception to the “clear statement rule” announced in
 
 Welch.
 
 The court held that the cases were distinguishable because the Eleventh Amendment does not apply in state courts and, thus, the
 
 Parden
 
 decision was based solely on principles of statutory construction of FELA as opposed to the constitutional construction issues presented in
 
 Welch.
 

 Id.
 
 at 1260-61 (footnotes and internal citations omitted). The court then turned to
 
 Alden v. Maine, supra,
 
 and its finding that
 
 Hilton
 
 is to be narrowly construed:
 

 The
 
 Alden
 
 Court explained that suit against the state in
 
 Hilton
 
 was allowed because the state, [by entering into the railroad business after the Court had earlier held that all who operated railroads would be subject to suit by injured
 
 *34
 
 workers under FELA effectively] consented to suit by its injured railroad workers. Sovereign immunity was not raised as an issue in
 
 Hilton,
 
 likely because the case was decided
 
 after-
 
 the Court had decided
 
 Parden v. Terminal Railway of Alabama Docks Department,
 
 which held that Alabama had “constructively” consented to suit by engaging in the railroad business after the enactment of FELA, but
 
 before
 
 the Court subsequently completely overruled
 
 Parden’s
 
 theory of constructive waiver in
 
 College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board.
 

 [24]
 

 Id.
 
 at 1261-62 (emphasis added) (citations omitted). Finally, the court examined the language in
 
 Alden
 
 which found that
 
 Hilton
 
 was not an acknowledgment of congressional authority to subject nonconsenting states to private lawsuits in their own courts:
 

 Our decision was “controlled and informed” by
 
 stare decisis.
 
 A generation earlier we had held that because the FELA made clear that all who operated railroads would be subject to suit by injured workers, States that chose to enter the railroad business after the statute’s enactment impliedly waived their sovereign immunity from such suits.... Some States had excluded railroad workers from the coverage of their workers’ compensation | ¡^statutes on the assumption that the FELA provided adequate protection for those workers. Closing the courts to FELA suits against state employers would have dislodged settled expectations and required an extensive legislative response.
 

 There is language in
 
 Hilton
 
 which gives some support to the position of petitioners here but our decision did not squarely address, much less resolve, the question of Congress’ power to abrogate States’ immunity from suit in their own courts. The respondent in
 
 Hilton ...
 
 neither contested Congress’ constitutional authority to subject it to suits for money damages nor raised sovereign immunity as an affirmative defense....
 

 ... When so read, we believe the
 
 [Hilton
 
 ] decision is best understood not as recognizing a congressional power to subject nonconsenting States to private suits in their own courts, nor even as endorsing the constructive waiver theory of
 
 Farden,
 
 but as simply adhering, as a matter of
 
 stare decisis
 
 and presumed historical fact, to the narrow proposition that certain States had consented to be sued by injured workers covered by the FELA, at least in their own courts.
 

 Glover,
 
 175 P.3d at 1262 (quoting
 
 Alden v. Maine,
 
 527 U.S. at 736-38, 119 S.Ct. 2240, 144 L.Ed.2d 636) (citations omitted)(emphasis added).
 

 The
 
 Glover-
 
 court concluded that because the “constructive consent” of
 
 Par-den, supra,
 
 had been overruled by the Supreme Court, and no express consent to suit by the state was evidenced, no basis for constructive consent to suit existed. Nor, the court found, was the scenario in
 
 Glover
 
 analogous to
 
 Hilton,
 
 as the Alaska statute expressly provided for workers’ compensation act benefits.
 
 Glover, supra,
 
 at 1263. The court noted that “[t]his distinction is particularly compelling because
 
 Hilton
 
 emphasized the importance of the ‘practical
 
 *35
 
 adverse effects’ of allowing an assertion of sovereign immunity, whereas here the state employees are eligible for workers’ compensation.”
 
 Glover, supra,
 
 at 1254-55 (footnotes omitted). Moreover, the court noted that where a sovereign declines to consent to suit under [2ithe Jones Act,
 
 [25]
 
 “no constitutional principles are violated by substituting workers’ compensation.”
 
 Glover,
 
 175 P.3d at 1254.
 
 [26]
 

 The court in
 
 Glover
 
 thus followed
 
 Alden’s
 
 mandate that states are free to decide when and under what terms they will consent to suit for private state court damage actions regarding federal claims brought against the state, “absent evidence that ‘the State has manipulated its immunity in a systematic fashion to discriminate against federal causes of action.’ ” Roger C. Hartley,
 
 Alden Trilogy: Praise and Protest,
 
 23 Harv. J.L. & Pub. Pol’y 323, 361 (2000)(quoting
 
 Alden,
 
 119 S.Ct. at 2268). “[I]n most cases it does not matter if a state waives its sovereign immunity in state tort or contract actions because a state may withhold consent on similar federal claims.”
 
 [27]
 
 Hartley,
 
 supra,
 
 23 Harv. J.L. & Pub. Pol’y at 368.
 

 It is unlikely that many states have consented to suit in their own courts on damage claims by individuals alleging violation of federal rights.
 
 Alden
 
 makes plain that Maine, for example, has not consented to FLSA overtime actions. Alden-type litigation was routine prior to the
 
 [Alden]
 
 Trilogy. In addition to Maine, cases were brought in Arkansas, Florida, Iowa, Louisiana, Maryland, Massachusetts, New Jersey, New Mexico, New York, Tennessee, and Wisconsin.
 
 [28]
 
 One |22can say with reasonable
 
 *36
 
 assurance that in these states there was no waiver of sovereign immunity permit•ting state courts to hear damage claims based on the federal causes of action in those cases. Otherwise, there would have been no need to litigate whether nonconsenting states can be sued for damages in state court-the issue in these cases.
 

 Hartley, 23 Harv. J.L.
 
 &
 
 Pub. Pol’y at 368.
 

 Notably,
 
 Alden
 
 did not explicitly overrule
 
 Hilton,
 
 which has been argued by some as preserving a provision for state courts to hear federal maritime personal injury claims.
 
 See
 
 Pfander,
 
 supra,
 
 at 3. However, as in
 
 Glover, supra,
 
 the case
 
 sub judiee
 
 is distinguishable from
 
 Hilton
 
 because the Appellant has access to remedies afforded under the state workers’ compensation act, while the injured employee in
 
 Hilton
 
 did not. See
 
 Glover,
 
 175 P.3d at 1255 (citing
 
 Hilton,
 
 502 U.S. at 202-03, 112 S.Ct. at 560). Moreover,
 
 Hilton
 
 has been significantly narrowed by the [^Supreme Court’s subsequent decisions, namely
 
 Alden, supra, Seminole Tribe, supra, and College Savings Bank, supra.
 

 [29]
 

 
 *37
 
 Accordingly, as the law currently stands pursuant to the U.S. Supreme Court’s
 
 “Alden
 
 trilogy” decisions, Appellant may not bring suit against the State of Louisiana under the Jones Act in State court without its consent.
 
 [30]
 
 Therefore, 12tapplying the foregoing U.S. Supreme Court jurisprudence to the facts of the case
 
 mb jvdice,
 
 we find that Appellant, as an employee of the DWF, an arm of the State, is governed by the exclusive remedies available under the Louisiana Workers’ Compensation Act.
 

 Assignment of Error # 2
 

 Appellant asserts that
 
 Chandns, supra,
 
 controls in establishing her seaman status; that defendants did not set forth evidence that Appellant was not engaged in commerce and that the vessel was employed to execute Louisiana’s police and administrative powers. As previously noted herein,
 
 *38
 
 it is unnecessary to reach the issue of whether Appellant established seaman status, as Appellant, a state employee, is governed by the exclusive remedies of the WCA, and the State of Louisiana has not given its consent to suit under the Jones Act.
 

 Assignment of Error # 3
 

 In her final assignment of error, Appellant asserts that the trial court erred in considering Appellees’ maintenance and cure payments in the context of determining her seaman status and the merits of her Jones Act and maritime claims.
 

 A review of the record evidences
 
 [31]
 
 that Appellant initially received maintenance checks beginning on September 1, 2000 at a rate of $175.00 per week. Starting on January 20, 2002, Appellant’s benefits were changed to the State workers’ compensation rate of $298.17 per week. Appellant was issued a|2scheck for the difference between the maintenance rate and the State rate on February 5, 2002. Appellant’s medical bills have also been paid.
 

 As Appellant acknowledges, Appellees were essentially required to issue maintenance and cure payments to Appellant immediately.
 
 [32]
 
 We agree with the trial court’s findings that the initial payment of maintenance and cure did not constitute a waiver of any defenses, particularly considering that our brethren in the Third Circuit found that such payments do not constitute waiver of an employer’s defenses.
 
 Thurman v. Patton-Tully Transp. Co.,
 
 619 So.2d 879, 881 (La.App. 3rd Cir.1993)(“The payment of maintenance and cure prior to suit does not constitute a waiver of any defenses which might be asserted.”).
 
 Thurman
 
 further held that an employer may be held liable for compensatory damages if a claim for maintenance and cure is unreasonably denied.
 
 [33]
 

 Id.
 
 Therefore, we conclude that the aforementioned payments did not constitute a waiver of any Jones Act defenses.
 

 |MCONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.
 

 46 U.S.C. § 30104 (2008).
 

 [2]
 

 . The State argued that because Karen Kue-bel’s status had not yet been determined by the court, the State had initiated maintenance and cure to avoid possible penalties. The State maintained that while the maintenance and cure remedy is construed expansively and paid almost automatically to an injured seaman, it does not constitute a settlement with a plaintiff. The State submitted that it opposed Ms. Kuebel's alleged seaman status from the inception of the lawsuit in its Answer to Ms. Kuebel's petition. Furthermore, the State argued that although it initially paid maintenance and cure, it subsequently determined that Ms. Kuebel was more likely a State employee and therefore entitled to full Workers' Compensation benefits in 2002, attaching a letter to Ms. Kuebel from the State as an exhibit. The State further noted that full Workers' Compensation benefits are greater than maintenance and cure benefits, and that when it stopped paying the maintenance and cure, it issued a check to Ms. Kuebel for the difference between the maintenance rate and the Workers' Compensation rate for her disability benefits, as evidenced by the letter. Accordingly, the State argued that Ms. Kuebel had been receiving Workers’ Compensation benefits, not maintenance and cure payments, for the previous six years.
 

 [3]
 

 . Appellate courts review a trial court's judgment on an exception of lack of subject matter jurisdiction by an application for supervisory writs, if it is arguably incorrect.
 
 Robinson v. Simmons Co.,
 
 1998-1936 (La.App. 4 Cir. 11/18/98), 725 So.2d 27 at n. 1.
 

 [4]
 

 . The Jones Act allows a seaman injured in the course and scope of her employment to bring a civil action against an employer. 46 U.S.C. § 30104.
 

 [5]
 

 . The Alden Court noted that petitioners originally filed the action in the United States District Court for the District of Maine. While that suit was pending, the U.S. Supreme Court decided
 
 Seminole Tribe of Fla. v. Florida,
 
 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), "which ma[de] clear that Congress lacks power under Article I to abrogate States’ sovereign immunity from suits commenced or prosecuted in the federal courts.”
 
 Alden, supra,
 
 at 712, 119 S.Ct. 2240. Pursuant to
 
 Seminole Tribe,
 
 the District Court of Maine dismissed petitioners' claims; the dismissal was affirmed by the Court of Appeals.
 
 Id.
 
 The claimants subsequently filed an identical action in state court, and the state court dismissed the action on the basis of sovereign immunity, which the Maine Supreme Judicial Court affirmed.
 
 Id.
 

 [6]
 

 .
 
 See, e.g.,
 
 Sean M. Monohan,
 
 A Tempest in the Teapot: State Sovereign Immunity and Federal Administrative Adjudications in Federal Maritime Commission v. South Carolina State Ports Authority,
 
 88 Cornell L.Rev. 1794, 1801-1805 (2003)(referring to
 
 Alden v. Maine
 
 as "the [U.S. Supreme] Court's most significant and controversial Eleventh Amendment decision to date”).
 

 [7]
 

 .
 
 See Pennsylvania v. Union Gas,
 
 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (upholding provisions subjecting states to suit in federal court under the Superfund Act);
 
 Parden v. Terminal Ry.,
 
 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (upholding provisions subjecting states to suit in federal court as employers under the Federal Employers' Liability Act); see also
 
 Petty v. Tennessee-Missouri Bridge Comm'n,
 
 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) (upholding federal jurisdiction over Jones Act suit against bi-state agency whose compact included sue and be sued clause and intent to preserve federal jurisdiction).
 

 Vicki C. Jackson,
 
 Seductions of Coherence, State Sovereign Immunity, and the Denationalization of Federal Law,
 
 31 Rutgers L.J. 691, n. 22 (2000).
 

 [8]
 

 .
 
 See
 
 note 7,
 
 supra. “Parden's
 
 constitutional conclusion was overruled in
 
 College Savings Bank; Union Gas
 
 was overruled in
 
 Seminole Tribe."
 
 Jackson,
 
 supra,
 
 31 Rutgers L.J. at n. 23.
 
 Union Gas
 
 and
 
 Parden
 
 are also discussed at length
 
 infra.
 

 [9]
 

 . See
 
 Hilton v. South Carolina Pub. Ry.,
 
 502 U.S. 197, 204-05, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991);
 
 Will v. Michigan Dep't of State Police,
 
 491 U.S. 58, 63-64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (noting that Eleventh Amendment does not apply in state courts and referring to a state's common law immunity from being sued without its consent);
 
 Atascadero State Hosp. v. Scanlon,
 
 473 U.S. 234, 240 n. 2, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985);
 
 Maine v. Thiboutot,
 
 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (asserting that "No Eleventh Amendment question is
 
 *26
 
 presenl, of course, where an action is brought in state court'');
 
 Nevada v. Hall,
 
 440 U.S. 410, 418-21, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) (noting that no constitutional immunity protects a state from being sued in the courts of another state);
 
 Employees of the Dep’t of Pub. Health and Welfare v. Department of Pub. Health and Welfare,
 
 411 U.S. 279, 286, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (noting that Fair Labor Standards Act arguably permits suits in state courts, but describing that as a question the court need not reach);
 
 id.
 
 at 297 n. 11, 93 S.Ct. 1614 (Marshall, J., concurring in the judgment) (arguing that states can be sued in state court);
 
 General Oil Co. v. Crain,
 
 209 U.S. 211, 228, 28 S.Ct. 475, 52 L.Ed. 754 (1908) (treating state sovereign immunity rules in state courts as insufficient to bar the Supreme Court from reviewing whether defendant’s enforcement of state statute would violate the constitution).
 

 Jackson,
 
 supra,
 
 31 Rutgers L. J. at n. 24.
 

 [10]
 

 . The State of Alaska's legislature amended its statutory waiver of immunity subsequent to
 
 Alden,
 
 ostensibly to articulate that Alaska plainly wished to invoke its immunity from federal maritime personal injury claims, thus leaving state Workers’ Compensation as the remedy available to employees. Pfander,
 
 Jones Act Claims, supra,
 
 at 2; Alaska Stat. § 09.50.250(5), 2003 Alaska Sess. Laws ch. 30 (July 1, 2003).
 

 [11]
 

 .
 
 See, e.g., Glover v. State, Dep’t. of Transp., Alaska Marine Highway Sys.,
 
 175 P.3d 1240 (Alaska 2008)(holding that a state-employed seaman could not bring suit against its employer in state court under the Jones Act or general maritime claims);
 
 Alabama State Docks Terminal Ry. v. Lyles,
 
 797 So.2d 432, 438 (Ala.2001)(holding that the state of Alabama was immune from suit for FELA claims and that the state constitution definitively established that sovereign immunity was not waived).
 

 [12]
 

 . "To the extent [a State] has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit.”
 
 Midgett,
 
 568 S.E.2d at 647-48 (quoting
 
 Alden,
 
 527 U.S. at 758, 119 S.Ct. at 2268, 144 L.Ed.2d at 680-81)(emphasis added).
 

 [13]
 

 . See note 14
 
 infra.
 

 [14]
 

 . Other noteworthy U.S. Supreme Court decisions include
 
 Federal Maritime Commission v. South Carolina State Ports Authority,
 
 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962, 2002 AMC 1372 (2002)(holding that sovereign immunity operates to protect nonconsenting states from having to answer private complaints before the Federal Maritime Commission) and
 
 Raygor v. Regents of the University of Minnesota,
 
 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002)(holding that state sovereign immunity can shield a state from the limitations-tolling provision in the federal supplemental jurisdiction statute).
 
 See
 
 David W. Robertson and Michael F. Sturley,
 
 Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits,
 
 27 Tul. Mar. L.J. 495, 499-502 (2003).
 

 Additionally, in reversing an unpublished decision of the United States Court of Appeals for the Eleventh Circuit, the Supreme Court in
 
 Northern Insurance Co. v. Chatham County,
 
 547 U.S. 189, 193-93, 126 S.Ct. 1689, 1695, 164 L.Ed.2d 367 (2006), held that a county is not entitled to sovereign immunity from suits in admiralty when it is not acting as an arm of the state.
 
 See
 
 David W. Robertson and Michael F. Sturley,
 
 Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits,
 
 31 Tul. Mar. L.J. 463, 473-74 (2007). The unanimous Court explained:
 

 This Court’s cases have recognized that the immunity of States from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the Convention or certain constitutional amendments.”
 
 Alden v. Maine,
 
 527 U.S. 706, 713[, 119 S.Ct. 2240, 144 L.Ed.2d 636] (1999);
 
 see Seminole Tribe of Fla. v. Florida,
 
 517 U.S. 44, 55-56[, 116 S.Ct. 1114, 134 L.Bd.2d 252] (1996);
 
 Principality of Monaco v. Mississippi,
 
 292 U.S. 313, 322 — 323[, 54 S.Ct. 745, 78 L.Ed. 1282] (1934). Consistent with this recognition, which no party asks us to reexamine today, we have observed that the phrase " 'Eleventh Amendment immunity' ... is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.”
 
 Alden,
 
 527 U.S. at 713, 119 S.Ct. at 2240.
 

 A consequence of this Court’s recognition of preratification sovereignty as the source of immunity from suit is that only States
 
 *28
 
 and arms of the State possess immunity from suits authorized by federal law.
 

 Chatham County,
 
 547 U.S. 189, 126 S.Ct. at 1693 (quoting
 
 Alden v. Maine,
 
 527 U.S. at 713, 119 S.Ct. at 2240)(emphasis added).
 
 See Robertson and Sturley, supra,
 
 31 Tul. Mar. L.J. at 474 (2007).
 

 [15]
 

 . With regard to immunity in tort or contract, the Louisiana Constitution provides that "[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.” LSA-Const. Art. 12 § 10. The section further provides that "[t]he legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.”
 
 Id.
 

 [16]
 

 . Furthermore, even if the State of Louisiana had absolutely waived sovereign immunity, the State could ostensibly mandate that the WCA is the vehicle by which such litigation should proceed.
 
 See Glover,
 
 175 P.3d at 1252.
 

 [17]
 

 . "[TJhe doctrine that a sovereign could not be sued without its consent was universal in the States when the [U.S.] Constitution was drafted and ratified.”
 
 Alden,
 
 527 U.S. at 715-16, 119 S.Ct. 2240.
 

 [18]
 

 . As noted herein, the Supreme Court, in
 
 College Savings Bank,
 
 overruled
 
 Parden
 
 and its constructive-waiver theory (the theory that Alabama waived its immunity from FELA suits because it operated a railroad used in interstate commerce).
 
 Coll. Sav. Bank,
 
 527 U.S. at 680-82, 119 S.Ct. 2219.
 

 [19]
 

 .The plaintiff in
 
 Oshinski
 
 relied upon the following language from
 
 Alden:
 

 Hilton, then, must be read in light of the doctrinal basis of Parden, the issues presented and argued by the parties, and the substantial reliance interests drawn into question by the litigation. When so read, we believe the decision is best understood not as recognizing a congressional power to subject nonconsenting States to private suits in their own courts, nor even as endorsing the constructive waiver theory of Parden, but as simply adhering, as a matter of stare decisis and presumed historical fact, to the narrow proposition that certain States had consented to be sued by injured workers covered by FELA, at least in their own courts.
 

 Alden,
 
 527 U.S. at 737-38, 119 S.Ct. at 2258.
 

 [20]
 

 . The
 
 Oshinski
 
 court further noted:
 

 In the alternative, if the Supreme Court did intend for its statements to be more than dicta, they do not affect our holding in this case. The Hilton Court stated, “Worker's compensation laws in many States [ (e.g. Indiana) ] specifically exclude railroad workers from their coverage because of the assumption that FELA provides adequate protection for those workers.”
 
 Hilton,
 
 502 U.S. at 202-03, 112 S.Ct. at 564. In
 
 Alden,
 
 the Court said that
 
 Hilton
 
 “is best understood ... as simply adhering, as a matter of
 
 stare decisis
 
 and presumed historical fact, to the narrow proposition that certain States had consented to be sued by injured workers covered by FELA, at least in their own states.”
 
 Alden,
 
 527 U.S. at 737-38, 119 S.Ct. at 2258.
 

 Even if we read these statements as holdings regarding Indiana’s consent to be sued in state court under FELA, nothing in them suggests blanket consent. In particular, the Hilton Court seemed to opine that states, such as Indiana, excluded railroad workers from their worker’s compensation statutes with the expectation that FELA would provide those workers with a cause of action. Our holding in this case does not run contrary to that policy consideration because we conclude that FELA claims against the State remain available to workers who comply with ITCA’s qualifications.
 

 Oshinski,
 
 843 N.E.2d at 545.
 

 [21]
 

 . Pursuant to
 
 Alden v. Maine,
 
 a private party may sue the state only if (1) the stale consented, (2) if Congress had validly abrogated the need for state consent, or (3) under
 
 Ex parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 Alden,
 
 527 U.S. at 755-58, 119 S.Ct. 2240. Appellant does not assert that
 
 Ex Parte Young
 
 is applicable to the facts of the instant case.
 

 [22]
 

 . The superior court's discussion was adopted and attached as "Appendix
 
 A"
 
 to the Alaska Supreme Court's opinion.
 

 [23]
 

 . Petitioner's argument [that Congress has abrogated the States' Eleventh Amendment immunity from suit under the Jones Act] fails in any event because Congress has not expressed in unmistakable statutory language its intention to allow States to be sued in federal court under the Jones Act. It is true that the [Jones] Act extends to
 
 '[a]ny
 
 seaman who shall suffer personal injury in the course of his employment,” § 33 (emphasis added). But the Eleventh Amendment marks a constitutional distinction between the States and other employers of seamen. Because of the role of the States in our federal system, '[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.’
 

 Welch v. Texas Dept. of Highways and Public Transp.,
 
 483 U.S. 468, 475-76, 107 S.Ct. 2941, 2947, 97 L.Ed.2d 389 (1987).
 

 [24]
 

 . “We think the constructive-waiver experiment of
 
 Farden
 
 was ill-conceived, and see no merit in attempting to salvage any remnant of it.... Whatever may remain of our decision in
 
 Parden
 
 is expressly overruled.”
 
 Glover,
 
 175 P.3d at 1262 (quoting
 
 College Savings Bank
 
 v.
 
 Florida Prepaid Postsecondary Education Expense Board,
 
 527 U.S. 666, 680, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999))(emphasis added).
 

 [25]
 

 . ''[W]aivers of sovereign immunity normally are drawn narrowly and seldom include waiver of individual damage actions based on federal law.” Hartley,
 
 supra,
 
 23 Harv. J.L. & Pub. Pol'y at 368.
 

 [26]
 

 . Two factors lead to a different conclusion regarding the constitutionality of a state remedy for state-employed seamen. First, the federal government provides at least some of its employed seamen with federal workers' compensation, as do several other states. These cases suggest that where a sovereign declines to submit to Jones Act suits, no constitutional principles are violated by substituting workers' compensation. Second, the case law justifying preemption has either failed to weigh the conflicting federal principle of state sovereign immunity at issue here or has been significantly narrowed by more recent U.S. Supreme Court cases, as discussed extensively below. These factors lead us to conclude that the Federal Constitution does not prohibit the application of state workers’ compensation to state-employed maritime workers, and therefore allows us to evaluate Glover's rights and the state's assertion of sovereign immunity in light of the fact that Glover is entitled to receive the remedy of workers' compensation.
 

 Glover,
 
 175 P.3d at 1254 (footnotes and citations omitted).
 

 [27]
 

 . "In
 
 Alden,
 
 for example, the Court never addressed petitioner's argument that Maine had consented to state law-based claims similar to the FLSA claims because there was no allegation that Maine had systematically manipulated its immunity to discriminate against federal claims.” Hartley,
 
 supra,
 
 23 Harv. J.L. & Pub. Pol'y at n. 227 (citing
 
 Alden,
 
 119 S.Ct. at 2268).
 

 [28]
 

 .
 
 See Chavez v. Arte Publico Press,
 
 157 F.3d 282, 291 (5th Cir.1998) (finding that, even if copyright suits against the states cannot be brought in federal court because Congress lacks Section 5 power to enact the copyright laws and noting in dicta that the Eleventh Amendment only shields states from. being sued in federal court);
 
 Aaron v. Kansas,
 
 115 F.3d 813, 817 (10th Cir.1997) (holding that an FLSA action for damages against the state may not be brought in federal court, but suggesting in dicta that "the employee can sue in state court for money damages under the FLSA as a state court of general jurisdiction is obligated by the Supremacy Clause to enforce federal law”);
 
 Wilson-Jones v. Caviness,
 
 99 F.3d 203, 211 (6th Cir.1996) ("[Sjtate employees may sue in state court for money damages under the FLSA, and a state court would be obligated by the Supremacy Clause to enforce federal law.”);
 
 see also Coolbaugh
 
 
 *36
 
 v.
 
 Louisiana,
 
 136 F.3d 430, 441 (5th Cir.1998) (Smith, J., dissenting) (concluding that a finding that Congress lacks Section 5 authority to enact the ADA would not "eviscerate the basic protections the ADA gives disabled individuals against discriminatory state action [because] the plaintiff could still sue a state in state court to enforce the obligations the state owes the disabled under the ADA").
 

 Hartley, 23 Harv. J.L. & Pub. Pol'y at n. 78 and n. 229.
 

 See, e.g., Ahern v. New York,
 
 244 A.D.2d 7, 11[, 676 N.Y.S.2d 232] (N.Y.App.Div.1998) ("In
 
 Seminole Tribe v. Florida ...,
 
 the United States Supreme Court merely held that the 11th Amendment prevents a private party from suing a State in Federal court, not that Federal statutes do not apply equally to both non-State and State defendants" because the sovereign immunity principle animating the Eleventh Amendment is not “ ‘immunity from suit in any forum.’” (quoting
 
 Bartlett v. Bowen,
 
 816 F.2d 695, 610 [710] (D.C.Cir.1987))). Other states have taken the same position.
 
 See Whittington
 
 v.
 
 State,
 
 [126 N.M. 21,] 966 P.2d 188 (N.M.Ct.App. 1998), vacated, [527 U.S. 1031,] 119 S.Ct. 2388[, 144 L.Ed.2d 790] (1999);
 
 Bunch v. Robinson,
 
 [122 Md. App. 437,] 712 A.2d 585 (Md.Ct.Sp.App.1998);
 
 Jacoby v. Arkansas Dep't of Educ.,
 
 [331 Ark. 508,] 962 S.W.2d 773 (Ark.998),
 
 vacated,
 
 [527 U.S. 1031,] 119 S.Ct. 2387[, 144 L.Ed.2d 789] (1999);
 
 Ribitzki v. School Bd. of Highlands County,
 
 710 So.2d 226 (Fla.Dist.Ct.App.1998);
 
 Clover Bottom Hosp. & Sch. v. Townsend,
 
 513 S.W.2d 505 (Tenn.1974).
 

 Hartley, 23 Harv. J.L. & Pub. Pol’y at n. 79 and n. 229.
 

 See, e.g., Allen v. Fauver,
 
 [327 N.J.Super.14,] 742 A.2d 594 (N.J.Super.Ct.App.Div.1999);
 
 Keller v. Dailey,
 
 [124 Ohio App.3d 298,] 706 N.E.2d 28 (Ohio Ct.App.1997);
 
 Alden v. State,
 
 715 A.2d 172, 174 (Me. 1998),
 
 aff'd,
 
 [527 U.S. 706,] 119 S.Ct. 2240[, 144 L.Ed.2d 636] (1999) (dismissing claim under
 
 the
 
 overtime provisions of the FLSA);
 
 Jackson v. State,
 
 544 A.2d 291, 298 (Me.1988), cert. denied 491 U.S. 904[, 109 S.Ct. 3185, 105 L.Ed.2d 694] (1989) (dismissing claim under the federal Rehabilitation Act);
 
 Board of Comm’rs. v. Splendour Shipping & Enters.,
 
 255 So.2d 869 (La.Ct.App.1972); see also
 
 Morris v. Massachusetts Maritime Academy,
 
 [409 Mass. 179,] 565 N.E.2d 422, 426 (Mass.1991) ("Although the Supreme Court has never addressed the question whether States may claim immunity in their own courts when the Eleventh Amendment bars suit in Federal Court, we think that, absent congressional command to the contrary, they may.")
 

 Hartley,
 
 supra,
 
 at n. 80 and n. 229.
 

 [29]
 

 . Justice Souter dissented from the majority in
 
 Alden,
 
 with Justices Stevens, Ginsburg, and Breyer joining, asserting that the majority erroneously referred to sovereign immunity as an "inherent notion of statehood” that was preserved by the Tenth Amendment. Ann Alt-house,
 
 The Alden Trilogy: Still Searching for a Way to Enforce Federalism,
 
 31 Rutgers L.J. 631, 653 (2000).
 

 Because sovereign immunity lacks a constitutional text, it needs something more to have the capacity to survive the creation of federal legislative powers, according to Jus
 
 *37
 
 tice Souter. He assumes that whether this capacity exists or not depends on whether sovereign immunity deserves the appellation "natural law.” He proceeds to analyze at length whether sovereign immunity is "natural law" or mere common law, even though the majority does not agree that this distinction determines whether Congress' original powers entail the power to abrogate immunity. But, Justice Souter's analysis of whether sovereign immunity is "natural law” or merely common law really only boils down to asking whether or not sovereign immunity is "defeasible by statute.” In other words, it is another way of asking the same old question: Does Congress have the power to abrogate sovereign immunity?
 

 Allhouse,
 
 supra,
 
 31 Rutgers L.J. at 655 (footnotes omitted). The dissenting opinion expressed concern for the state employees who could be adversely affected by the majority’s decision:
 

 For the dissenters, straightforward normative reasoning seems to demand that these workers receive their lost wages. One senses Justice Souter’s frustration with the recalcitrant state when he wonders why it did not see fit to end all of this litigation by simply paying the workers what the FLSA required and when he ridicules, as mere "whimsy,” the majority's idea that the Secretary of Labor can serve the litigation interests of the nation’s 4.7 million state workers.
 

 Id.
 
 at 658-59 (footnotes omitted). The author concludes that
 
 Alden
 
 necessarily protects states from excessive litigation:
 

 Because Congress can still impose on the states, though only in a particular, deferential way,
 
 Alden
 
 is an example of the moderate version of enforcing federalism. In comparison to overruling
 
 Garcia [v. San Antonio Metropolitan Transit Authority,
 
 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)(as being averse to judicial enforcement of federalism) 1,
 
 Alden
 
 can be seen as better because it does not restrict Congress from regulating in all areas and protects the states from the excesses of litigation by permitting only federal officials to bring lawsuits for retrospective relief. Not only can this be seen as a preferable way to balance state and federal interests, but it is a better way to use judicial resources.
 
 Garcia
 
 spares courts from having to figure out where to draw the line between what Congress can and cannot regulate, and
 
 Alden
 
 relieves courts of all but the lawsuits that federal officials deem worthwhile.
 

 Id.
 
 at 660 (footnotes omitted).
 

 [30]
 

 . Prior to
 
 Alden,
 
 the Supreme Court could, and did, soften the blow of denying plaintiffs a federal forum by suggesting that plaintiffs still could enforce federal rights in state court.
 
 Alden
 
 now precludes that mollification.
 

 Hartley, 23 Harv. J.L. & Pub. Pol’y at 366-67 (footnotes omitted). However, a different outcome in
 
 Alden,
 
 as previously noted, would have resulted in even more confusion:
 

 Had
 
 Alden
 
 been decided differently, state courts would have experienced an abundant influx of private damage actions to enforce federal rights against the state. The inevitable result would have been an increased demand on the Supreme Court to mediate the fairness of local procedural rules at a time when the Court’s precedent is somewhat chaotic. This is no-win work for the Court. Either the Court imposes federal procedural rules on discontented stale court judges and officials or it abandons plaintiffs to the vicissitudes and burdens of local rules. The
 
 Aklen
 
 decision liberated the Court from this trap.
 

 Hartley, 23 Harv. J.L. & Pub. Pol'y at 359.
 

 [31]
 

 . Correspondence dated May 22, 2008 from a claims adjuster for the State of Louisiana to counsel for Appellees referenced Appellant's name, claim number, date of injury, dates and amounts of compensation, and further indicated that Appellant's medical bills were paid.
 

 [32]
 

 . When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance and cure regardless of whether the shipowner was at fault or whether the ship was unseaworthy.
 
 See Morales v. Garijak, Inc.,
 
 829 F.2d 1355, 1358 (5th Cir.1987). "Maintenance” is the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the ship. "Cure” is the right to necessary medical services. This duty to pay maintenance and cure is of ancient vintage, and its origin is customarily traced back to the medieval sea codes.
 
 See The Osceola,
 
 189 U.S. 158, 169, 23 S.Ct. 483, 484-85, 47 L.Ed. 760 (1903);
 
 see generally
 
 Grant Gilmore & Charles L. Black, Jr.,
 
 The Law of Admiralty
 
 § 6-6, at 281 (2d ed.1975); Thomas J. Schoenbaum,
 
 Admiralty and Maritime Law
 
 § 6-28, at 348 (2d ed.1994).
 

 Guevara v. Maritime Overseas Corp.,
 
 59 F.3d 1496, 1499 (5th Cir.1995).
 

 [33]
 

 .Should the defendant ultimately be found to have unreasonably denied the claim, then the defendant may be liable for compensatory damages in addition to maintenance and cure. If the defendant's conduct is further found to be arbitrary and capricious, then the defendant is subject to the additional penalty of punitive damages.
 

 Thurman v. Patton-Tully Transp. Co.,
 
 619 So.2d 879, 881 (La.App. 3rd Cir.1993).