McDonald, j.
 

 Lin this writ application, the Board of Supervisors for the University of Louisiana System on behalf of its member institution, the University of Louisiana at Lafayette (collectively the “Board” or
 
 *476
 
 “defendants”), seeks review of the trial court’s judgment denying its peremptory exception raising the objection of no cause of action as to the Fair Labor Standards Act (“FLSA”) wage and retaliation claims asserted by plaintiff, Mark Palandro. For the reasons that follow, we deny the writ application.
 

 BACKGROUND
 

 The petition provides the following allegations. The Board hired Mark Palandro to work as a teacher and instructor at the Marine Survival Training Center. Under his contract with the Board, Palandro was classified as an hourly employee, paid on a monthly basis, required to clock in and out, and required to keep track of his time when he was working away from his regular workplace. Palandro claims defendants did not pay him for all of the hours he worked because of the rounding method defendants used when calculating payroll.
 
 [1]
 
 Palandro asserts that the defendants’ conduct violates the wage and hour provisions of the FLSA. Subsequently, Palandro supplemented his petition to add a retaliation claim against the defendants.
 
 [2]
 

 The Board filed an exception raising the objection of no cause of action as to Palan-dro’s claims seeking to enforce provisions of the FLSA. The Board urges that Louisiana’s sovereign immunity acts as a bar to Palandro’s seeking to enforce ^provisions of the FLSA, unless Louisiana expressly consents to be sued under the federal FLSA statute, which consent the Board asserts Louisiana has not given.
 

 Conversely, Palandro contends that Louisiana has constitutionally consented to the suit. Palandro urges that an employment relationship is contractual in nature and Louisiana Constitution, Article XII, Section 10(A) waives the State’s sovereign immunity in suits based in contract and tort. On May 11, 2009, the trial court rendered judgment denying the exception of no cause of action without assigning reasons. Judgment was signed on May 27, 2009.
 

 The Board presents a single assignment of error. We granted certiorari to determine whether Louisiana Constitution, Article XII, Section 10 establishes Louisiana’s consent to be sued in state court under the facts of this case.
 

 STANDARD OF REVIEW
 

 The reviewing court conducts a
 
 de novo
 
 review of a trial court’s ruling sustaining or denying an exception of no cause of action, because the exception raises a question of law, and the trial court’s decision is based only on the sufficiency of the petition.
 
 Gobert v. S.W.D.I., L.L.C.,
 
 2008-1598 (La.App. 1 Cir. 5/5/09), 13 So.3d 608, 611. The burden of demonstrating that the petition states no cause of action is upon the mover.
 
 Ramey v. DeCaire,
 
 2003-1299 (La.3/19/04), 869 So.2d 114, 119. In reviewing the petition to determine whether a cause of action has been stated, the court must, if possible, interpret it to maintain the cause of action.
 
 Walsh & Bailey v. Lofaso,
 
 2005-1476 (La.App. 1 Cir. 6/9/06), 938 So.2d 999, 1001-02.
 

 
 *477
 
 DISCUSSION
 

 In light of the United States Supreme Court’s decision in
 
 Alden v. Maine,
 
 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the Board urges that Louisiana must explicitly consent to suit under the FLSA.
 
 YoA-Alden,
 
 the Board asserts that Louisiana Constitution, Article XII, Section 10(A)’s waiver of | immunity in contract suits is not sufficient to establish Louisiana’s explicit consent to a suit seeking to enforce FLSA provisions against the State brought in state court.
 

 Our review of the Board’s assignment of error begins with a review of
 
 Alden.
 
 In
 
 Alden,
 
 a group of probation officers filed suit against their employer, the State of Maine, alleging that Maine had violated the overtime provisions of the FLSA.
 
 Alden,
 
 527 U.S. at 711, 119 S.Ct. 2240. The Maine Supreme Court affirmed the trial court’s judgment dismissing the suit on the basis of sovereign immunity.
 
 Alden,
 
 527 U.S. at 712, 119 S.Ct. 2240.
 

 Because there was a split among the states as to whether the FLSA was a voluntary federal statute, the United States Supreme Court granted certiorari to determine the constitutionality of the provisions of the FLSA purporting to authorize private actions against states in their own courts without regard for consent.
 
 Id.
 
 The Supreme Court held that states’ consent to suit was required in a private FLSA action. To determine if Maine had consented to be sued in its own courts under the FLSA, the Supreme Court examined whether Maine had consented to the suit under the standard that Maine uses to waive its sovereign immunity-
 

 As to Maine’s standard for waiving immunity, Maine regards immunity from suit as one of the highest attributes inherent in the nature of sovereignty.
 
 Alden,
 
 527 U.S. at 757, 119 S.Ct. 2240. As to how Maine consents to suit, the Supreme Court found that Maine adheres to the general rule that a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity.
 
 Alden,
 
 527 U.S. at 757-58, 119 S.Ct. 2240.
 

 In deciding
 
 Alden,
 
 the Supreme Court noted that the
 
 Alden
 
 plaintiffs did not attempt to establish waiver of immunity under Maine’s legislative standard.
 
 Alden,
 
 527 U.S. at 758, 119 S.Ct. 2240. Instead, the
 
 Alden
 
 plaintiffs argued that Maine had ^discriminated against federal rights by claiming sovereign immunity from this statute.
 
 Id.
 
 The United States Supreme Court disagreed, finding no evidence that Maine manipulated its immunity in a systematic fashion to discriminate against federal causes of action.
 
 Id.
 
 To the extent Maine had chosen to consent to certain classes of suits while maintaining its immunity from others, the Supreme Court found that Maine had done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit.
 
 Id.
 

 In the present matter, we must determine whether Louisiana constitutionally waived its sovereign immunity and consented to suit seeking to enforce provisions of the FLSA in a contract dispute. To do this,
 
 Alden
 
 directs us to determine and apply the standard Louisiana uses to waive its sovereign immunity to a suit brought against the State in state court.
 

 Article XII, Section 10
 
 [3]
 
 of the Louisiana Constitution of 1974 provides Louisiana’s
 
 *478
 
 constitutional standard for waiving sovereign immunity and consenting to suit. Article XII, Section 10(A) states, “Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.” In addition to waiving immunity in | (¡contract and tort actions, Article XII, Section 10(B) provides that the legislature “may authorize other suits against the state, a state agency, or a political subdivision.”
 

 Under Louisiana’s constitutional scheme for waiving sovereign immunity, the waiver of immunity provided in Sections 10(A) and (B) is not absolute. Article XII, Section 10(C) gives the legislature the authority to limit the extent of liability, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages in suits authorized against the state. Finding that Louisiana has constitutionally waived immunity from suit and liability in contract, we must now determine whether Palandro’s wage and hour claim, which alleges violations of the FLSA, falls within the constitutional waiver of immunity in contract suits.
 

 In
 
 West v. State through State Superintendent of Public Ed.,
 
 324 So.2d 579, 580 (La.App. 1 Cir.1975), on an exception of no cause of action, this Court considered whether a claim under an employment contract, seeking to enforce FLSA requirements, could be brought against a special state agency under the Louisiana Constitution of 1921. The 1921 constitutional provision governing suits against the State empowered the legislature to enact special or general laws or resolutions to waive the immunity from suit and liability of the state, parishes, municipalities, boards, agencies, and other listed governmental entities. La. Const. Art. Ill, § 35 (1921). Article XIX, Section 26 of the 1921 Constitution withdrew the State’s consent to suits and legal proceedings for ten “special agencies of the state,” with the expressed exception for suits for the enforcement of contracts entered into by any of the special agencies or for the recovery of damages for the breach of such contracts. La. Const. Art. XIX, § 26 (1921).
 

 The employer in
 
 West
 
 was one of the special agencies listed in the 1921 Constitution.
 
 West,
 
 324 So.2d at 581. The
 
 West
 
 plaintiffs were husband and wife and were “cottage parents” in a “half-way house” run by one of the special 17agencies.
 
 West,
 
 324 So.2d at 580. Mrs. West alleged that she had an employment contract with the special agency and was paid monthly based on a 40-hour work week. Mrs. West filed a contract action against the special agency, complaining that her employment contract required her to work more hours than the hours for which she was paid.
 
 Id.
 
 
 *479
 
 Mr. West did not have an explicit employment contract with the special agency. However, he alleged that under the terms of his wife’s employment contract, he was required to live on the premises with Mrs. West, assist her in her performance of her duties, and work the same hours as his wife, but was not paid any compensation.
 
 Id.
 

 In deciding whether the
 
 West
 
 petition asserted an action in contract, this Court deemed it elementary that the relationship of employer-employee is contractual in nature.
 
 West,
 
 324 So.2d at 581. Since the petition alleged an employer-employee relationship as the basis for the claim, this Court concluded that the
 
 West
 
 plaintiffs alleged a cause of action in contract.
 
 Id.
 
 Specifically, this Court found that the
 
 West
 
 petition alleged an express contract of employment between Mrs. West and the special agency and an implied contract of employment between Mr. West and the special agency.
 
 Id.
 

 As to whether the FLSA applied to the employment contracts, this Court found pertinent the principle that laws in existence when a contract is confected become part of the agreement and are incorporated therein as though expressly forming part of the covenant.
 
 Id.; see also
 
 La. C.C. art. 2054. Moreover, this Court stated that the Louisiana Supreme Court has expressly held that when an agreement of employment exists or comes into being, the provisions of the FLSA become part of the contract as fully as if the provisions of the law are incorporated therein by the parties.
 
 Id., citing Johnson v. Anderson-Dunham Concrete Co.,
 
 212 La. 276, 282, 31 So.2d 797, 799 (1947).
 
 [4]
 
 Therefore, this Court concluded that the wage and hour provisions of the FLSA were incorporated into the
 
 West
 
 plaintiffs’ employment contracts. Accepting the allegations in the petition as true, this Court concluded that the petition stated a cause of action under the wage and hour provisions of the FLSA.
 
 Id,
 

 [5]
 

 The Board urges that
 
 West
 
 is distinguishable because the case was decided under Louisiana’s 1921 constitution. We find the Board’s argument unpersuasive. The 1921 constitutional standard for waiving sovereign immunity required a legislative act authorizing suit against the State, with the exception of actions brought for the enforcement of contracts entered into by the listed special agencies. In contrast, the current constitution provides a general waiver of immunity from suit and liability in contract and tort, subject to the limitations and restrictions the legislature may impose pursuant to Article XII, Section 10(C). Louisiana’s current constitution also maintains the legislature’s ability to authorize other types of suits against the State, subject to the Article XII, Section 10(C) limitations. Accordingly, we find that the current constitution expands the right to sue, rather than limiting it more than the prior constitution had done.
 
 See Adams v. City of Baton Rouge,
 
 95-2515 (La.App. 1 Cir. 4/30/96), 673 So.2d 624, 630,
 
 writs denied,
 
 96-1491 and 96-1492 (La.9/20/96), 679 So.2d 439,
 
 citing Har-grave, “Statutory” and “Hortatory” Provisions of the Louisiana Constitution of 1971,
 
 43 La.L.Rev. 647, 651 (1983). Therefore, we find that the distinction made by the Board between the current and former
 
 *480
 
 constitutions is not determinative of the issue presented in this matter.
 

 The Board also points out that
 
 West
 
 was decided prior to the United States Supreme Court’s holding, in
 
 Alden,
 
 that a private FLSA action against a state in 19state court requires the state’s consent. The Board urges that the proper analysis to use to determine whether Article XII, Section 10 evidences Louisiana’s consent is set out in
 
 Kuebel v. Dept. of Wildlife and Fisheries,
 
 2008-1018 (La.App. 4 Cir. 4/15/09), 14 So.3d 20,
 
 writ denied,
 
 2009-1083(La.9/4/09), 17 So.3d 964. In
 
 Kuebel,
 
 the Fourth Circuit examined the provisions in Louisiana Constitution, Article XII, Section 10 and the pertinent provisions of the Louisiana Workers’ Compensation Act (the “LWCA”) in order to determine if Louisiana consented to be sued in its own courts by individuals seeking recovery under the Jones Act.
 
 [6]
 

 The
 
 Kuebel
 
 court stated that, although the Louisiana Constitution mandates that the State is not immune in tort or contract, immunity is not absolute, as Article XII, Section 10 also provides that the legislature may limit the State’s liability.
 
 Kuebel,
 
 14 So.3d at 29. As to the LWCA, the
 
 Kuebel
 
 court noted that the LWCA mandates the application of the provisions of the LWCA to state employees. Moreover, the LWCA provides that the payment of compensation pursuant to the terms and conditions of the LWCA is exclusive, compulsory, and obligatory.
 
 Kuebel,
 
 14 So.3d at 28-29. Reading Article XII, Section 10 in conjunction with the LWCA, the
 
 Kuebel
 
 court found that, although injured State employees do not have the right to bring a Jones Act claim, Louisiana has established a procedure for suits against the State by providing that injured State employees may bring claims for payment of compensation under the LWCA.
 
 Kuebel, 14
 
 So.3d at 29.
 

 In regard to the issue before this Court, Louisiana Constitution, Article XII, Section 10(A) provides that Louisiana is not immune from suit and liability in | incontract. In
 
 West,
 
 this Court deemed that a claim based on an employer-employee relationship alleges a cause of action in contract.
 
 West,
 
 324 So.2d at 581. This Court has also determined that the principle that laws in existence when a contract comes into existence are incorporated and become part of the agreement, operates to incorporate the FLSA into employment agreements.
 
 Id.
 

 While Article XII, Section 10(C) clearly empowers the legislature to limit the extent of liability, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages in suits in contract based on an employment-related wage dispute, the legislature has not enacted such legislation with respect to claims based on FLSA provisions. In
 
 Kuebel,
 
 the LWCA’s mandatory, exclusive coverage and compensation provisions provided such a legislative limitation to the waiver of Louisiana’s immunity in tort actions where an employee seeks recovery against Louisiana in state court under the Jones Act. However,
 
 Kuebel
 
 does not ad
 
 *481
 
 dress Louisiana’s constitutional waiver of immunity in contract actions where an employee seeks recovery against Louisiana in state court based on the provisions of the FLSA. The Board has not shown, as was shown in
 
 Kuebel,
 
 a legislative enactment that limits or restricts an employee from asserting such a contact claim against Louisiana in state court.
 

 Moreover, in determining whether Louisiana Constitution, Article XII, Section 10 waives the State’s sovereign immunity in this matter, we are bound by
 
 West
 
 and its holding that a claim based on an employee-employer relationship is contractual in nature and that the FLSA is incorporated into employment agreements. Until such time as the legislature acts to limit or exclude wage and hour claims seeking to enforce FLSA protections from the constitutional waiver of immunity from suits in contracts or otherwise limits the private remedies provided by the FLSA against the State in state courts, we conclude that Louisiana has | n constitutionally waived sovereign immunity in contract suits brought in state courts against Louisiana, seeking to enforce provisions of the FLSA.
 

 Based on a
 
 de novo
 
 review, we find that the petition alleges that a contract of employment existed between Palandro and the Board and that the Board failed to pay Palandro for all of the hours he worked, in violation of the FLSA. Accepting these allegations as true, we find that the petition states a cause of action in contract, seeking to enforce provisions of the FLSA. Accordingly, we find no error in the trial court’s ruling and deny the writ.
 

 WRIT DENIED.
 

 KUHN, J., concurs in the denial of the writ.
 

 [1]
 

 . The petition gives the following examples to illustrate how the rounding policy benefits the defendants. If an employee arrives at work and clocks in at 8:50 a.m., the bookkeeper rounds the time up to the next ⅛ hour or 9:00 a.m. However, if an employee leaves for lunch at 11:55 a.m., the bookkeeper rounds the time down to 11:45 a.m. for payroll calculation purposes. Under these examples, Palandro contends an employee is effectively cheated out of 20 minutes of pay.
 

 [2]
 

 . The petition also asserts a state law claim against the defendants. The state law claim is not at issue herein.
 

 [3]
 

 . § 10. Suits Against the State
 

 (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
 

 
 *478
 
 (B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
 

 (C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the .legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
 

 La. Const. Art. XXII, § 10.
 

 [4]
 

 .
 
 Johnson
 
 involved a wage claim dispute between an employee and a private employer.
 

 [5]
 

 . Finding that sovereign immunity was constitutionally waived, the Court found it unnecessary to consider whether state sovereign immunity had been removed in this area by the effect of federal law.
 
 West,
 
 324 So.2d at 582.
 

 [6]
 

 . In
 
 Higgins v. State Through the DOTD,
 
 627 So.2d 217 (La.App. 4 Cir. 1993),
 
 writ denied,
 
 93-3113 (La.2/11/94), 634 So.2d 374, the Fourth Circuit had previously held that an injured state employee could bring suit against the state under the Jones Act and general maritime law in state court.
 
 Kuebel,
 
 14 So.3d at 24. However, in light of the significant changes in federal jurisprudence and law brought by
 
 Alden,
 
 the
 
 Kuebel
 
 court declined to extend the
 
 Higgins
 
 rationale to the matter before it. Rather, the
 
 Kuebel
 
 Court examined several
 
 post-Alden
 
 maritime cases in other jurisdictions, and found that those other courts had generally interpreted
 
 Alden
 
 as disallowing suits against the state for maritime and railroad personal injuries absent the state’s explicit consent.
 
 Kuebel,
 
 14 So.3d at 26-27.