BELSOME, J.,
dissents with reasons.
Lin handing down the Alden Trilogy,[1] the U.S. Supreme Court has articulated *850 its intent with regard to whether a litigant may bring suit against a state in its own courts on a federal cause of action. As an intermediate court of appeal, we are bound to follow their directive. To simply ignore this precedent and statutory scheme laid out by the Louisiana Workers’ Compensation Act is an insufficient ground to overrule this Court’s decision in Kuebel v. Department of Wildlife and Fisheries. I dissent.
The majority seeks to overrule this Court’s decision in Kuebel v. Department of Wildlife and Fisheries, 2008-1018 (La.App. 4 Cir. 4/15/09), 14 So.3d 20, unit denied, 2009-1083 (La.9/4/09), 17 So.3d 964, by not only failing to examine La. laConst. Art. XII in its entirety, but also by relying upon Higgins,[2] and discounting post-Higgins United States Supreme Court jurisprudence which fundamentally changes the law regarding whether a state may be sued in its own court, without its consent, on a federal cause of action.
In an attempt to establish that Louisiana has consented to be sued in its own courts, the majority only includes a partial citation from the article upon which it primarily relies from the Louisiana Constitution. Specifically, the majority fails to mention or even acknowledge that La. Const. Art. XII, Section 10 also contains a subsection (B) and (C). Section 10(C) contains language that explicitly limits the broad language quoted by the majority in Section 10(A):
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
The majority’s complete omission of La. Const, art. XII, Sec. 10(C) from its analysis is not unlike reviewing an insurance policy’s coverage while completely ignoring the policy’s exclusions. La. Const, art. XII, Sec. 10(A), read in a vacuum, simply cannot serve as a basis for concluding that Louisiana has consented to be sued in its own courts by a State employee on a federal cause of action.[3]
IsRather, pursuant to the mandates of La. Const. Art. XII, Section 10(C), the Louisiana Legislature has, in fact, explicitly “provide[d] for the extent of liability of *851 the state [or] a state agency” in La. R.S. 23:1034:
A. The provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or a political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; provided that one employed by a contractor who has contracted with the state or other political subdivision, or incorporated public board or commission through its proper representative, shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission; further, provided that members of the police department, or municipal employees performing police services for any municipality who are not elected officials shall be covered by this Chapter and shall be eligible for compensation; and provided further that criminal deputy sheriffs for the parish of Orleans shall be covered by this Chapter and shall be eligible for compensation as provided herein.
[[Image here]]
D. Employees of the state, but not those of political subdivisions, shall be provided compensation under this Section by the office of risk management of the Division of Administration in accordance with R.S. 39:1527, et seq. For purposes of this Section, “employees of the state” means the employees of “state agencies” as defined by R.S. 39:1527(1). Employees of political subdivisions shall be provided compensation under this Section by the governing authorities of their respective political subdivisions. The fact that the state may grant to an employee of a political subdivision any additional or supplemental pay or otherwise provide funds for the payment of such employee’s salary shall not make such employee, in whole or in part or in any way, an employee of the state.
La. R.S. 23:1034(A) and (D) (emphasis added). Not only has the Legislature provided for the extent of the state’s liability, but Louisiana has also “provide[d] a procedure for suits against the state [or] a state agency” through Louisiana Workers’ Compensation courts and judges. The State of Louisiana is permitted to | ¿limit its liability,[4] and has plainly evidenced its intent to *852 do so by the Legislature’s limitation of injured state employees to the “exclusive, compulsory, and obligatory” remedy of Workers’ Compensation Act. La. R.S. 2S:1034(A).[5]
With regard to Louisiana jurisprudence, the majority is correct in its observation that Higgins addressed a similar issue and held that an injured state employee could bring suit against the State under the Jones Act. However, Higgins held that the injured employee had no remedy available under the Louisiana Workers’ Compensation Act. In this case, as was the case in Kuebel, the injured State employees will be compensated under the exclusive and obligatory mandates of workers’ compensation. Most significantly, pursuant to U.S. Supreme Court jurisprudence, Higgins is simply no longer good law.
As explained in Kuebel, this Court in Higgins relied upon the now significantly narrowed Hilton v. South Carolina Public Railways Commission, 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991).[6] Kuebel, 2008-1018, p. 5, 14 So.3d at 24. As numerous scholars have noted, the U.S. Supreme Court’s decision in Alden v. Maine, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), abrogated Hilton.[7] More significantly, the Alden Court held that “the powers delegated to Congress under Article I of the United States Constitution do not include the power to |,.¡subject nonconsenting States to private suits for damages in state courts.”[8] Alden, 527 U.S. at 712, 119 S.Ct. 2240 (em *853 phasis added).[9]
As recognized in Kuebel, the U.S. Supreme Court previously held in Seminole Tribe of Fla. v. Florida that a state cannot be sued in federal court on a federal statutory claim. Seminole Tribe, 517 U.S. 44, 116 S.Ct. 1114, 184 L.Ed.2d 252 (1996).[10] Thus, disallowing claims against the states in their own courts based upon a federal cause of action follows logically, as it would be “anomalous to subject the states to private suits in state courts while immunizing the states from the exact same suits in federal court.” William P. Marshall, Understanding Alden, 31 Rutgers L.J. 803, 823 (2000).[11] The Alden Court recognized that “[i]t is | r,unquestioned that the Federal Government retains its own immunity from suit not only in state tribunals but also in its own courts.” Alden, 527 U.S. at 749, 119 S.Ct. at 2264. Therefore, “[i]n light of our constitutional system recognizing the essential sovereignty of the States, we are reluctant to conclude that States are not entitled to a reciprocal privilege.” Id. at 749-750, 119 S.Ct. 2240.
As this Court noted in Kuebel, courts have naturally considered the directives of Alden as a prohibition of suits against the state (in state court) for maritime and railroad personal injuries.[12] Kuebel, 2008- *854 1018, p. 8, 14 So.3d at 26 (citing Pfander, supra, at 7).[13]
Turning to a post-Alden case with a fact pattern most analogous to the instant case is Glover v. State, Dep’t. of Transp., Alaska Marine Highway Sys., 175 P.3d 1240 (Alaska 2008). In Glover, the Supreme Court of Alaska examined U.S. Supreme Court jurisprudence in light of Alden v. Maine and concluded that because Alaska did not consent to suit in state court under the Jones Act or general maritime law, the state employee’s exclusive remedy was workers’ compensation. Glover, 175 P.3d at 1255, 1260-63.
|7In considering whether Congress, pursuant to the Jones Act, abrogated the requirement that a state must consent to suit,[14] the Glover court acknowledged that “[t]he [U.S.] Supreme Court has issued two conflicting rulings on the applicability of the Jones Act to non-consenting states”: Welch v. Texas Department of Highways and Public Transportation, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) and Hilton v. South Carolina Public Railways Commission, 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). Kuebel, p. 17, 14 So.3d at 32 (quoting Glover, 175 P.3d at 1255). Significantly, in Welch, the Court explicitly recognized the distinction between the State as an employer of seamen, and private employers of seamen:
Petitioner’s argument [that Congress has abrogated the States’ Eleventh Amendment immunity from suit under the Jones Act] fails in any event because Congress has not expressed in unmistakable statutory language its intention to allow States to be sued in federal court under the Jones Act. It is true that the [Jones] Act extends to ‘[a]ny seaman who shall suffer personal injury in the course of his employment,’ § 33 (emphasis added). But the Eleventh Amendment marks a constitutional distinction between the States and other employers of seamen. Because of the role of the States in our federal system, ‘[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.’
Welch, 483 U.S. at 475-76, 107 S.Ct. at 2947 (emphasis added).
*855 As recognized in Kuebel and Glover,[15] the Alden Court articulated in no uncertain terms that its prior decision in Hilton could not be interpreted or relied upon as an acknowledgment of congressional authority to subject nonconsenting states to private lawsuits for federal claims in state courts:[16]
|8Our decision [in Hilton ] was “controlled and informed” by stare decisis. A generation earlier we had held that because the FELA made clear that all who operated railroads would be subject to suit by injured workers, States that chose to enter the railroad business after the statute’s enactment impliedly waived their sovereign immunity from such suits.... Some States had excluded railroad workers from the coverage of their workers’ compensation statutes on the assumption that the FELA provided adequate protection for those workers. Closing the courts to FELA suits against state employers would have dislodged settled expectations and required an extensive legislative response.
There is language in Hilton which gives some support to the position of petitioners here but our decision did not squarely address, much less resolve, the question of Congress’ power to abrogate States’ immunity from suit in their own courts. The respondent in Hilton ... neither contested Congress’ constitutional authority to subject it to suits for money damages nor raised sovereign immunity as an affirmative defense....
... When so read, we believe the [Hilton ] decision is best understood not as recognizing a congressional power to subject nonconsenting States to private suits in their own courts, nor even as endorsing the constructive *856 waiver theory of Farden, but as simply adhering, as a matter of stare decisis and presumed historical fact, to the narrow proposition that certain States had consented to be sued by injured workers covered by the FELA, at least in their own courts.
Glover, 175 P.3d at 1262 (quoting Alden, 527 U.S. at 736-38, 119 S.Ct. 2240) (citations omitted)(emphasis added).
| ^Furthermore, the Glover Court found that Hilton was not factually similar,[17] because the Alaska statutes, like the Louisiana statutes, expressly provided for workers’ compensation act benefits. Glover, supra, at 1263. The court emphasized that “[t]his distinction is particularly compelling because Hilton emphasized the importance of the ‘practical adverse effects’ of allowing an assertion of sovereign immunity, whereas here the state employees are eligible for workers’ compensation.” Glover, supra, at 1254-55 (footnotes omitted). The Glover Court further held that if a state has not clearly expressed its consent to be sued in its own courts under the Jones Act, “no constitutional principles are violated by substituting workers’ compensation.” Glover, 175 P.3d at 1254 (emphasis added).[18]
While it is true that the claim at issue in Alden implicated the Constitution of the State of Maine, not the Louisiana Constitution, this is a distinction without a difference. Alden held that a state may not be sued in its own courts without its consent on a federal cause of action. The Alden Court examined Maine’s constitution and determined that Maine had not consented to suit under the FLSA. Likewise, a review of the language in the Louisiana constitution, cited supra, reveals that the State of Louisiana has limited its liability and has not expressed its consent to be sued in its own courts on a Jones Act claim. The difference in the |)nlanguage and structure of the two constitutions is of no moment, because the result is identical.
With regard to the language employed in various sections of the WCA, the appellant notes that La. R.S. 23:1035.2, entitled “Claims covered by certain federal laws,” does not also include additional language such as “pertaining only to persons not employed by the State of Louisiana.” Because such language is not present, the majority reasons that, notwithstanding U.S. Supreme Court jurisprudence to the contrary, Section 1035.2 stands for the proposition that “any employee” can sue their employer under the Jones Act in a *857 state court, even if that employer is the State of Louisiana. Notably, this rigid approach in its interpretation of the workers’ compensation statutes has not been accepted by this Court or others.
Furthermore, Louisiana state employees have their own specific section in La. R.S. 28:1034, cited supra. There was absolutely no need for the legislature to exempt State employees from Section 1035.2 when Section 1034 explicitly provides that the WCA is the exclusive remedy for State employees.[19] Section 1035.2 simply provides that no compensation under the WCA is available to employees covered under the Jones Act. Pursuant to the Supreme Court’s holding in Alden, read together with La. R.S. 23:1034, state employees are not covered under the Jones Act. Most importantly, however, La. R.S. 23:1035.2 cannot be construed as a clear waiver of immunity by the State of Louisiana or as Louisiana’s consent to be sued in its own courts on a federal cause of action, a threshold requirement pursuant to the plain language of Alden. Alden, 527 U.S. at 757-758, 119 S.Ct. at 2268 (holding that “specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective hi mantle of immunity”)(quoting Cushing v. Cohen, 420 A.2d 919, 923 (Me.1980)(emphasis added).
Interestingly, this Court found that a private employee who was eligible for compensation under the Longshore and Harbor Workers’ Compensation Act (LHWCA) was limited to recovery under same and was thus precluded from also recovering Supplemental Earnings Benefits under the Louisiana Workers’ Compensation Act (WCA). Flowers v. Coastal Cargo Co., Inc., 2001-0656 (La.App. 4 Cir. 3/20/02), 815 So.2d 198, 200, writ denied, 2002-0923 (La.5/31/02), 817 So.2d 100.
In Flowers, Joseph Flowers injured his arm in the course and scope of his employment and filed a claim with the Office of Workers’ Compensation (OWC) against his employer, Coastal Cargo Company, Inc. (Coastal). Summary judgment was filed by both parties regarding whether Mr. Flowers could bring a claim for Supplemental Earnings Benefits, a remedy not available under the LHWCA. The OWC held that Mr. Flowers’ sole remedy was the LHWCA and not the WCA. Id. at 199.
On appeal, this Court considered whether the preclusion of wage earning capacity benefits under the WCA on the basis that Mr. Flowers had a remedy under the LHWCA was unconstitutional on its face or as applied to Mr. Flowers. Mr. Flowers argued that his loss of wage earning capacity did not have a remedy under the federal act; that pursuant to La. R.S. 23:1035.2, he was precluded from a remedy for that loss because he was entitled to benefits under the LHWCA; that his loss of wage earning capacity would “far exceed the amount of scheduled benefits”; and that because the two benefits are distinct, he should have been permitted to pursue a claim for those benefits not available to him under the LHWCA. Id.
| ^Coastal maintained that the Louisiana Legislature has determined, “as a matter of public policy, that an injured worker whose claim falls within the jurisdiction of the LHWCA is precluded from asserting a claim under the State Act [WCA].” Id. Despite the disparity in the two remedies, and the lack of certain relief available to Mr. Flowers under the LHWCA, Coastal argued that Mr. Flowers was nonetheless not entirely without a remedy. Id.
*858 Considering the foregoing, this Court affirmed the judgment of the OWC, noting that Mr. Flowers would be compensated for his injuries under the LHWCA:
In this case, Mr. Flowers will receive compensation for his injuries under the LHWCA, namely, temporary total disability from July 5,1996 through January 6, 1998; permanent total disability benefits from January 7, 1998 through July 26, 1998; and permanent partial disability benefits thereafter, and therefore we cannot find that he has been left injured entirely without a remedy. O’Regan [v. Preferred, Enterprises, Inc., 98-1602, p. 14 (La.3/17/00),] 758 So.2d [124,] 134.[20]
Id. at 200 (emphasis added). Therefore, this Court held that Section 1035.2 was “constitutional on its face and as applied to Mr. Flowers, because the legislature has the authority to limit codal remedies as long as it does not leave the injured party entirely without [a] remedy.” Id. Accordingly, this Court held that Mr. Flowers was not entitled to seek loss of wage earning capacity because “[although both acts [the LHWCA and the WCA] may not provide the exact same compensation for the injuries sustained by their respective claimants, | issaid claimants are not denied recovery for their injuries.” Id. (emphasis added).
Kuebel simply held that a state employee who also happened to be a seaman could not, pursuant to the mandates of Alden, sue the State of Louisiana, in state court, on a Jones Act claim. Unlike the circumstances in Higgins, the employee here is not entirely without a remedy, see Flowers, supra; the injured employee is afforded a remedy under the exclusive and obligatory provisions of the Louisiana Workers’ Compensation Act. Although this result may be somewhat unsatisfactory to some,[21] it is plainly the outcome that the U.S. Supreme Court intended.[22]
*859 114Therefore, absent intervention by the Legislature or a higher authority, we are bound to follow the U.S. Supreme Court’s decision in Alden v. Maine, which “firmly and decisively bars the recovery of damages against state governments for violating federal statutes, no matter what the forum.” Wells, supra, 31 Rutgers L.J. at 800 (emphasis added). The Cosey-Hig-gins precedent upon which the majority relies has been explicitly abrogated by the United States Supreme Court.[23] Further *860 more, Louisiana cannot be deemed to have expressed its consent to be sued in its own courts for Jones Act claims.[24] I respectfully dissent.

. The "Alden Trilogy” refers to “a trio of federalism cases” handed down by the United States Supreme Court on June 23, 1999 "which immunize state governments from citizen damage suits alleging a violation of federal rights”: Alden v. Maine, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the leading case; Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575; and College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Roger C. Hartley, Alden Trilogy: Praise and Protest, 23 Harv. J.L. & Pub. Pol'y 323, 350 (2000).
One author described the Alden Trilogy holdings as follows:
Alden v. Maine struck down an attempt by Congress, acting under its Article I powers, to subject states to suits in state court on federal statutory grounds. Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank curbed Congress’ power under Section 5 of the Fourteenth Amendment to authorize suits against state governments on constitutional grounds, reasoning that a case cannot be made for the federal cause of action unless state law remedies are inadequate. A companion case, College Savings Bank v. Florida Prepaid Postsecondary Education Expense *850 Board, repudiated the notion that a state may "constructively” waive its sovereign immunity by engaging in conduct that is regulated by federal law.
Michael Wells, Suing States for Money: Constitutional Remedies After Alden and Florida Prepaid, 31 Rutgers L.J. 771 (2000)(footnotes and citations omitted).

. Higgins v. State of Louisiana, 627 So.2d 217 (La.App. 4 Cir.1993).

. "[Wjaivers of sovereign immunity normally are drawn narrowly and seldom include waiver of individual damage actions based on federal law.” Roger C. Hartley, Alden Trilogy: Praise and Protest, 23 Harv. J.L. & Pub. Pol'y 323, 368 (2000)(emphasis added).

. "To the extent [a State] has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit.” Midgett v. North Carolina Dep't of Transp., 152 N.C.App. 666, 568 S.E.2d 643, 647-48 (2002) (quoting Alden, 527 U.S. at 758, 119 S.Ct. at 2268, 144 L.Ed.2d at 680-81)(emphasis added). In Midgett, a seaman and an employee of the state’s Department of Transportation ("DOT”) who had previously received a workers’ compensation settlement, appealed the Industrial Commission’s dismissal of his Jones Act claims against the DOT for lack of jurisdiction. The court found that language within the state’s Tort Claims Act constituted a specific waiver of immunity under certain circumstances. Id. at 645. Relying upon Alden, supra, the court held that although the state’s Tort Claims Act expressed the statutory waiver of immunity to some claims, the state did not consent to be sued under the Jones Act in state court. Id. at 647.

. Furthermore, as we discussed in Kuebel, the U.S. Supreme Court has held that there can be no "constructive waiver” in this regard. "We think the constructive-waiver experiment of Parden [v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964)] was ill-conceived, and see no merit in attempting to salvage any remnant of it.... Whatever may remain of our decision in Parden is expressly overruled.” College Savings Bank v. Florida Prepaid Postsecondaiy Education Expense Board, 527 U.S. 666, 680, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)(emphasis added)).

. Hilton did not involve the Jones Act; the Hilton court considered whether an employee of a state-owned railroad could bring suit against its employer under the Federal Employers’ Liability Act (FELA) in state court. Hilton v. South Carolina Public Railways Commission, 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991).

. In deciding Alden, the United States Supreme Court "reject[ed] more than twenty years worth of constitutional decisions that had established Congress' powers to subject states to suit under federal laws,” overruled Pennsylvania v. Union Gas, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) and Parden, supra, effectively "discount[ing] assumptions about sovereign immunity in state courts made in at least six other decisions.” Vicki C. Jackson, Seductions of Coherence, State Sovereign Immunity, and the Denationalization of Federal Law, 31 Rutgers L.J. 691, 696 (2000)(citing Hilton v. South Carolina Pub. Ry., 502 U.S. 197, 204-05, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991)).

. The majority asserts that Alden is distinguishable because the claims were filed in federal court, not state court. This is incorrect. As noted in Kuebel:
The Alden Court noted that petitioners originally filed the action in the United States District Court for the District of Maine. While that suit was pending, the U.S. Supreme Court decided Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), "which ma[de] clear that Congress lacks power under Article I to abrogate States’ sovereign immunity from suits commenced or prosecuted in the federal courts.” Alden, supra, at 712, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636. Pursuant to Seminole Tribe, the District Court of Maine dismissed petitioners' claims; the dismissal was affirmed by the Court of Appeals. Id. The claimants subsequently filed an identical action in state court, and the state court dismissed the action on the basis of sovereign immunity, which the Maine Supreme Judicial Court affirmed. Id.
Kuebel, supra, at n. 5 (emphasis added).

. Notably, the other citation upon which the majority relies, Cosey v. Department of Transportation and Development, an unpublished writ, was handed down in 1993, the same year as Higgins.

. As recognized in Kuebel, the Supreme Court’s decision in Alden was in part an effort to ensure that federal claims against a sovereign would not shift from federal court into state court as a result of its previous decision in Seminole Tribe:
The [Alden] Court further found that "[a] broad immunity was necessary ... to prevent the 'indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties’ " because to hold otherwise, "the Court reasoned, states would "face the prospect of being thrust, by federal fiat and against [their] will, into the disfavored status of a debtor....” Sean M. Monohan, A Tempest in the Teapot: State Sovereign Immunity and Federal Administrative Adjudications in Federal Maritime Commission v. South Carolina State Ports Authority, 88 Cornell L.Rev. 1794, 1801—1805 (2003)(quoting Alden, supra). "The Court based its decision on structural principles and state dignity, as well as on a perceived need to protect its Seminole Tribe decision from erosion through efforts to shift the assertion of federal law claims into state courts.” [James E.] Pfander, [Jones Act Claims Against the States After Alden v. Maine: The Surprisingly Strong Case for a Compulsory State Court Forum,] 36 Mar. L. & Com. [1] at 7.
Kuebel, 2008-1018, p. 6, 14 So.3d at 24 (emphasis added).

. The author further noted:
[A]s the Alden majority expressed, forcing the state to hear claims against itself is a double-barreled invasion. The first is the creation of the federal statutory right that imposes liability on the states in the first place. The second is the pressing of the "State’s own courts into federal service” to enforce that claim.
Marshall, supra, 31 Rutgers L.J. at 810 (quoting Alden, 119 S.Ct. at 2264)(emphasis added).
Additionally, perhaps "the most valid understanding of the interpretive process deployed in Alden is that a majority of the Court preferred state autonomy, fiscal predictability, and political accountability, and disapproved of individuals’ ability to influence the course of government through litigation.” Roger C. Hartley, supra, at 350.

. Kuebel, 2008-1018, p. 8, 14 So.3d at n. 11 (citing Glover v. State, Dep't. of Transp., Alaska Marine Highway Sys., 175 P.3d 1240 (Alaska 2008), which held that a state-employed seaman could not bring suit in state court under the Jones Act or general maritime claims (see discussion infra), and Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 438 (Ala.2001), which held that the state of Alabama was immune from suit for FELA claims and that the state constitution demonstrated that sovereign immunity was not waived).

. The significance and impact of the Supreme Court’s decision in Alden is evidenced not only by the jurisprudence that followed, but also by the unprecedented events in the courtroom:
This "Tuesday Trilogy” declared portions of three federal statutes unconstitutional, overturned one thirty-five-year-old decision of the Court, reversed the outcome in' another, and precipitated a forty-five-minute "scene of extraordinary drama” at the Court the morning the cases were announced from the bench. Each Justice who wrote a majority opinion read excerpts from it, as did the authors of the various dissenting opinions. Several Justices digressed from text during their oral presentations. As one account put it, the exchange was "[n]ot exactly a street brawl episode of 'The Jerry Springer Show,’ but this was about as close to high drama as it gets in the distinguished, white-columned building that most Americans equate with the essence of justice.” Another report observed that ”[t]he rhetorical volleys ... held the audience of tourists and government lawyers spellbound.” The opinions’ strident and sometimes sarcastic language revealed a deep division within the Court as the two sides attempted to describe their irreconcilable understanding of the founding generation’s intent regarding state sovereign immunity.
Hartley, supra, at 324-326 (citations omitted).

. A private party may sue the state only if (1) the state consented, (2) if Congress had validly abrogated the need for state consent, or (3) under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Kuebel, 14 So.3d at n. 21 (citing Alden, 527 U.S. at 755-58, 119 S.Ct. 2240).

. The Glover court held that Hilton was so significantly narrowed by the Supreme Court’s subsequent decisions in Alden v. Maine, supra, Seminole Tribe of Florida v. Florida, supra, and College Savings Bank, supra, that Hilton could not be relied upon by state employees attempting to bring a Jones Act suit against a state in state court. Kuebel, p. 17, 14 So.3d at 32.

. Underlying constitutional form are considerations of great substance. Private suits against nonconsenting States-especially suits for money damages-may threaten the financial integrity of the States. It is indisputable that, at the time of the founding, many of the States could have been forced into insolvency but for their immunity from private suits for money damages. Even today, an unlimited congressional power to authorize suits in state court to levy upon the treasuries of the States for compensatory damages, attorney’s fees, and even punitive damages could create staggering burdens, giving Congress a power and a leverage over the States that is not contemplated by our constitutional design. The potential national power would pose a severe and notorious danger to the States and their resources.
Alden, 527 U.S. at 750, 119 S.Ct. at 2264.
As noted in Kuebel, Alden has also been recognized as evidence of the Court's desire to protect the states from excessive litigation:
Because Congress can still impose on the states, though only in a particular, deferential way, Alden is an example of the moderate version of enforcing federalism. In comparison to overruling Garcia [v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)(as being averse to judicial enforcement of federalism) ], Alden can be seen as better because it does not restrict Congress from regulating in all areas and protects the states from the excesses of litigation by permitting only federal officials to bring lawsuits for retrospective relief. Not only can this be seen as a preferable way to balance state and federal interests, but it is a better way to use judicial resources. Garcia spares courts from having to figure out where to draw the line between what Congress can and cannot regulate, and Alden relieves courts of all but the lawsuits that federal officials deem worthwhile.
Kuebel, supra (quoting Ann Althouse, The Alden Trilogy: Still Searching for a Way to Enforce Federalism, 31 Rutgers L.J. 631, 653 (2000)).

. As previously noted herein, neither this case nor Kuebel is analogous to Hilton (which did not involve the Jones Act) because both Fulmer and Kuebel have access to remedies afforded under the state workers' compensation act, while the injured employee in Hilton did not. See Glover, 175 P.3d at 1255 (citing Hilton, 502 U.S. at 202-03, 112 S.Ct. at 560).

. Two factors lead to a different conclusion regarding the constitutionality of a state remedy for state-employed seamen. First, the federal government provides at least some of its employed seamen with federal workers’ compensation, as do several other states. These cases suggest that where a sovereign declines to submit to Jones Act suits, no constitutional principles are violated by substituting workers’ compensation. Second, the case law justifying preemption has either failed to weigh the conflicting federal principle of state sovereign immunity at issue here or has been significantly narrowed by more recent U.S. Supreme Court cases, as discussed extensively below. These factors lead us to conclude that the Federal Constitution does not prohibit the application of state workers’ compensation to state-employed maritime workers, and therefore allows us to evaluate Glover’s rights and the state's assertion of sovereign immunity in light of the fact that Glover is entitled to receive the remedy of workers’ compensation.
Glover, 175 P.3d at 1254 (emphasis added)(footnotes and citations omitted).

. See related discussion regarding Flowers v. Coastal Cargo Co., Inc., 2001-0656 (La.App. 4 Cir. 3/20/02), 815 So.2d 198, 200, writ denied, 2002-0923 (La.5/31/02), 817 So.2d 100, infra.

. This Court also found that Mr. Flowers’ reliance upon the O'Regan case was misplaced:
Mr. Flowers cites O'Regan v. Preferred Enterprises, Inc. 98-1602 (La.3/17/00), 758 So.2d 124, as support for his argument to claim loss of earning potential under the WCA while receiving other benefits under LHWCA. However, O’Regan supports the notion that when a claimant does not have any remedy under the WCA because the claimant failed to prove that the disease occupational, the WCA's exclusive remedy provision did not bar the employee from filing a subsequent suit in tort. This case discussed alternative options for the claimant when the case was not appropriate under the WCA; it did not grant the claimant the option to file a claim in both workers’ compensation and tort. Further, this case juxtaposes a workers' compensation claim against a tort, not a state workers' compensation claim versus a federal workers’ compensation claim. Both acts give workers appropriate remedies for the injuries they sustained on the job.
Flowers, 815 So.2d at 200.

. The U.S. Supreme Court’s respect for state sovereign immunity has indisputably broadened with the expansion of federal legislation, and also with the U.S. Supreme Court's decisions in Seminole Tribe, supra, and Alden, supra, which provide that "no relief under federal legislation [is available] to a citizen injured by the state unless the federal government decides to intervene.” Sarah Louise House, Alden v. Maine: Protecting the States at the Expense of the People, 62 La. L.Rev. 275, 2990300 (2001)(footnotes and citations omitted). Indeed, Alden is indicative of the Supreme Court's “desire to expand state power at the expense of the federal government and, ultimately, the people.” Id. at 301 (emphasis added).

. Local maritime scholars have also recognized the Supreme Court's intent with regard to the Alden Trilogy:
As we have noted in Recent Developments over the past several years, [footnote omitted] recent Supreme Court jurisprudence has added a federal constitutional dimension to the immunity of state governments. This jurisprudence has little or no effect on *859 states’ exposure to ordinary tort claims based on state law, because these are not cognizable anyway unless the state has abrogated its sovereign immunity, [citing Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).] But the recent Supreme Court jurisprudence is of interest to admiralty lawyers, because the Jones Act, [46 U.S.C. app. § 688(a) (2000)] Federal Employers’ Liability Act (FELA), [45 U.S.C. § 51 (2000) ] and general maritime law often create liability where state tort law would not, and, in the absence of a waiver, these bodies of law are now unavailable in suits against state governments. The federal constitutional immunity does not apply to municipal governments, [citing Alden v. Maine, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).]
In the relevant line of Supreme Court cases, the Court has held that states are immune from private suits in federal courts under either federal or state law [citing Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)] and cannot be sued by private parties under federal law even in their own courts, [citing Alden, 527 U.S. 706, 119 S.Ct. 2240.] Congress has no power to authorize such suits except pursuant to Section 5 of the Fourteenth Amendment, which gives Congress power to protect civil rights, [citing Seminole Tribe v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).] This line of cases, in which the Court has ascribed the states' immunity to the Tenth and Eleventh Amendments and to preconstitutional notions of state sovereignty, is generally understood to mean that, unless they have waived their immunity, state governments cannot be subjected to liability under federal statutes other than civil rights laws.
The Court's recent jurisprudence shows that any statute that the Court deems a valid exercise of Congress’s authority under Section 5 of the Fourteenth Amendment is perforce a civil rights law for present purposes. Last year, we reported on Nevada Department of Natural Resources v. Hibbs, [538 U.S. 721, 123 S.Ct. 1972 (2003)] which held in a 6-3 decision that the Family Medical Leave Act [29 U.S.C. § 2617(a)(2) (2000)] authorizes suits against public employers, [citing Hibbs, 538 U.S. at 737, 123 S.Ct. at 1982-83] This year we have Tennessee v. Lane, [541 U.S. 509, 124 S.Ct. 1978 (2004)] a 5-4 decision holding that Title II of the Americans with Disabilities Act (ADA), which prohibits disability discrimination by public entities, [42 U.S.C. §§ 12131, 12202 (2000)] authorized an action by a wheelchair-bound man who had to crawl up two flights of courthouse stairs to answer a misdemeanor traffic charge, [footnote omitted]
Some constitutional law scholars believe that the Court is backing away to some extent from its recent inclination to shift power from Congress to the states.
David W. Robertson and Michael F. Sturley, Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits, 29 Tul. Mar. L.J. 369, 378-379 (2005)(emphasis added).
Yet another Louisiana author noted that "the [U.S. Supreme] Court's respect for state sovereign immunity is long-held, having disallowed attempts by Congress to use its Article I powers to enact legislation intruding upon state sovereignty.” Meredith S. Byars, The Supreme Court’s Section 5 Analysis in Tennessee v. Lane: Considering the Future of State Sovereignty, Public Policy, and the Treatment Needs of Mentally Ill Prisoners, 80 Tul.L.Rev. 947, n. 2 (citing Alden v. Maine; ildaho v. Coeur d'Alene Tribe, 521 U.S. 261, 267-69, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); Seminole Tribe v. Florida; United States v. Lopez, 514 U.S. 549, 553-57, 567-68, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); New York v. United States, 505 U.S. 144, 149-57, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); and Hans v. Louisiana, 134 U.S. 1, 9-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

. Acknowledging that the Supreme Court "ha[s] often described the States immunity in sweeping terms, without reference to whether the suit was prosecuted in state or federal court,” the Alden Court also emphasized that
*860 "[w]e have said on many occasions, furthermore, that the States retain their immunity from private suits prosecuted in their own courts.” Alden, 527 U.S. at 745-746, 119 S.Ct. at 2262 (emphasis added)(citing Beers v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991 (1857) (“It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission”); Railroad Co. v. Tennessee, 101 U.S. 337, 339, 25 L.Ed. 960 (1879) ("The principle is elementary that a State cannot be sued in its own courts without its consent. This is a privilege of sovereignty”); Cunningham v. Macon & Brunswick R. Co., 109 U.S. 446, 451, 3 S.Ct. 292, 27 L.Ed. 992 (1883) ("It may be accepted as a point of departure unquestioned, that neither a State nor the United States can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which a State may be made a party in the Supreme Court of the United States by virtue of the original jurisdiction conferred on this court by the Constitution”); Louisiana ex rel. New York Guaranty & Indemnity Co. v. Steele, 134 U.S. 230, 232, 10 S.Ct. 511, 33 L.Ed. 891 (1890) (finding a suit against a state official in state court to be "clearly within the principle” of the Eleventh Amendment decisions); Hess v. Port Authority Trans-Hudson Corporation, 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) ("The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State’s own tribunals”); Seminole Tribe, 517 U.S., at 71, n. 14, 116 S.Ct. 1114, 134 L.Ed.2d 252 ("[Tjhis Court is empowered to review a question of federal law arising from a state-court decision where a State has consented to suit”); see also Great Northern Life Ins. Co. v. Read, 322 U.S., at 59, 64 S.Ct. 873, 88 L.Ed. 1121 (Frankfurter, J„ dissenting) ("The Eleventh Amendment has put state immunity from suit into the Constitution. Therefore, it is not in the power of individuals to bring any State into court-the State's or that of the United States-except with its consent”); accord, id., at 51, 53, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (majority opinion); cf. Quern v. Jordan, 440 U.S. 332, 340, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Green v. Mansour, 474 U.S. 64, 71, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

. One author recounts the detailed history of the expansion of sovereign immunity in Louisiana and in the passage of sections 10(A) and (C) to Article XII of the Louisiana Constitution;
[T]he Louisiana Constitution of 1974 provided for a specific waiver of sovereign immunity in article XII, section 10(A). Although unartfully drafted, the intended purpose of the provision was to provide that the State’s sovereign immunity was waived in any suit for contract or tort. Since the enactment of the constitutional provision, there has been a plethora of case law and statutory provisions relating to immunity. Title 9, chapter 1 of the Civil Code ancillaries contains a host of statutes providing immunity for public bodies, as well as many other immunities for other interests. Obviously, immunity, not only for the sovereign and its political subdivisions but for many private interests, has become de rigueur since the passage of the Louisiana Constitution of 1974.
In 1985, the Louisiana Legislature enacted its first version of its discretionary function exception. A number of commentators raised serious questions about the constitutionality of the Louisiana discretionary function statute as being contrary to article XII, section 10(A) of the Louisiana Constitution of 1974. Several cases added judicial heft to this position. Segura v. Louisiana Architects Selection Board held that the pre-1974 statute exempting the State from payment of court costs was superseded by the constitutional waiver of sovereign immunity in 1974. Also, in Jones v. City of Baton Rouge, the court held that the imposition of Louisiana Civil Code article 2317 imposing strict liability upon municipalities was consistent with the constitutional waiver of sovereign immunity. Louisiana Supreme Court cases like Sibley v. Board of Supervisors of Louisiana State University (on rehearing) kept the constitutional argument as to the
*861 statute alive and well. Finally, in Chamberlain v. State Through Department of Transportation & Development, the Supreme Court found that the legislature's power to enact laws that abrogated some of the effects of abolition of state sovereign immunity is subject to constitutional challenge. In that case, the court found a cap on damage awards against governmental agencies unconstitutional.
After the Chamberlain decision, the legislature went into high gear and proposed a constitutional amendment that passed in 1995. This provision adds subsection C to article XII, section 10, and provides:
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
Subsequently, a curious plurality opinion of the Louisiana Supreme Court in Gregor v. Argenot Great Century Insurance Co. construed the discretionary function exception to extend immunity to the State and its political subdivisions beyond the immunity contained in the FTCA. In what is apparently dicta, the court overruled Fowler v. Roberts. In Fowler, the court held that discretion exists only when a policy judgment has been made and that the exception protected the government from liability only if the policy making was on a ministerial level, but not at the operational level. The Gregor plurality stated that the Louisiana discretionary exception statute did not make a distinction between operational acts and ministerial or policy-making acts. This holding substantially eviscerates what was accomplished by the Louisiana Constitutional Convention of 1974 and approved by the voting public.
Thus, with Gregor and the passage of the 1995 constitutional amendment, the efforts of the delegates to the Louisiana Constitutional Convention of 1974 have been significantly diluted.
Stanwood R. Duval, Sovereign Immunity, Anachronistic or Inherent: A Sword or A Shield? 84 Tul. L.Rev. 1471, 1480-1482 (2010)(emphasis added) (citations and footnotes omitted).